# Hal Iverson *v.* The State.

## *Indictment for Murder.*

1. *Repeal of statutes; special statutes not repealed by subsequent general statutes.* — A subsequent statute will not repeal a prior act, in the absence of express words of repeal, unless the provisions of the subsequent act are directly antagonistic and repugnant to those of the former. If by any fair construction it is possible for both to have some field of operation, both must stand; especially where the general words of the later statute are the only evidence of the legislative intent to repeal the particular provisions of the former act.

2. *Section 4180 of Revised Code not repealed by the act to amend § 4063 of Rev. Code.* — The act to amend § 4063 of the Rev. Code, approved December 31, 1868 (Acts 1868, p. 550), which requires the officers therein designated to select grand and petit jurors from the list of registered voters on file in the probate judge's office, observing strictly "all qualifications and restrictions in regard to competency and qualification as now provided by law," does not repeal § 4180 of the Rev. Code, which allows a challenge for cause, in a criminal trial, to one summoned as "a juror, and not a resident freeholder or householder for the preceding year." (BRICKELL, C. J., dissenting.)

3. *Freeholder or householder; renting of land merely for one year does not constitute.* — A person who had merely "rented land for the last twelve months," is not a "freeholder" or "householder," within the meaning of § 4180 of the Revised Code.

4. *Challenge for cause; error in disallowing; when not cured by subsequent allowance of additional challenges.* — Error in disallowing a challenge for cause to a juror, thereon peremptorily challenged by a defendant, whose challenges were not then exhausted, will not be cured by allowing him to exhaust a greater number of peremptory challenges than given by law, it not appearing when the court made known its purpose to allow the extra number of challenges.

VOL. LII.

APPEAL from the Circuit Court of Choctaw County. Tried before Hon. LUTHER R. SMITH. The facts are set forth in the opinion.

W. F. GLOVER, & COBBS, for appellant.

JOHN W. A. SANFORD, Attorney General, contra.

JUDGE, J. — On the trial of this cause, one O. C. Young was drawn and called as a juror, and was asked by the court whether he had been a householder or a freeholder for the past twelve months; the juror answered, "I am not a householder, but have rented land for the past twelve months." The defendant insisted that the juror was incompetent to sit upon his case; but the court ruled that he was a competent juror, to which ruling the defendant excepted and then excused the juror from the panel.

Section 4180 of the Revised Code provides that it is a good ground of challenge by either party, in a case like the present, that the person called as a juror has not been a resident householder or freeholder of the county for the last preceding year; and the first question we shall consider is: Has this section of the Code, or any portion thereof, been repealed by the act of the legislature approved December 31st, 1868? Acts 1868, pp. 550-1.

The act of 1868 is entitled "An act to amend section 4063 of the Revised Code of Alabama," and is as follows:—

"SECTION 1. Be it enacted by the General Assembly of Alabama, That section 4063 of the Revised Code of Alabama which reads as follows, to wit: ' The sheriff, judge of probate, and clerk of the circuit or city court, or any two of them, must meet biennially on the first Monday in May, or within thirty days thereafter, at the office of the clerk of the circuit or city court, and select from said list the names of such persons as in their opinions are competent to discharge the duties of grand and petit jurors with honesty, impartiality, and intelligence, and are esteemed in the community for their integrity, fair character, and sound judgment; but no person must be selected who is under twenty-one years of age, or over sixty years of age, or who is an habitual drunkard, or who is afflicted with a permanent disease,' be and the same is hereby amended as follows: The sheriff, judge of probate, and clerk of the circuit or city court, or any two of them, must meet on the first Monday in January, eighteen hundred and sixty-nine, and every year thereafter, at the office of the judge of probate, and select from the list of registered voters, on file in the office of the judge of probate, such persons as in their opinions are compe-

[Iverson v. State.]

tent to discharge the duties of grand and petit jurors : *Provided*, that all the qualifications and restrictions with regard to competency and qualification in the selection of jurors, as is now required by the law in this section, shall be strictly observed by said officers."

As will be seen, this act makes no reference whatever to section 4180 of the Code ; it simply does what it purports by its caption to do, viz.: amends section 4063 of the Revised Code. If, then, section 4180, or any portion thereof, is repealed by the act, it is a repeal by implication only.

The rule is well settled and universally acknowledged, that the repeal of a statute by implication is not favored ; and that the courts will not construe a prior act to be repealed by a subsequent one, in the absence of express words of repeal, unless the provisions of the subsequent act are directly repugnant to the former. But when such repugnancy exists, the latter must prevail, and consequently the former is repealed to the extent that the provisions of the two acts are inconsistent with each other. 2 Brickell's Digest, 463, §§ 44, 45. If, however, it be possible to reconcile them together, — if by fair interpretation they may both stand, — the subsequent statute will not abrogate the former. Sedgwick on Stat. & Con. Law, 105 ; Smith on Stat. & Con. Law, 879.

It becomes then a material question whether there is such a repugnancy between section 4180 of the Code, or any portion thereof, and the act of 1868, as that the latter abrogates the former.

Although both statutes relate to some extent, to the same subject matter (the selection and qualification of jurors), yet each has a separate and distinct field of operation. One provides for a general annual selection of persons to serve as grand and petit jurors ; the other prescribes the grounds of challenges for cause of jurors drawn for the trial of criminal causes only. In other words, one is general in its provisions ; the other relates to a special class of cases ; and the well recognized rule is, that where the intention of the legislature is not apparent to that purpose, the general words of another and later statute shall not repeal the particular provisions of a former one ; the maxim of the law being, " *Generalia specialabus non derogant.*" *Magruder* v. *The State*, 40 Ala. 349.

But if it should be said that a conflict may ensue in the selection of a jury to try a criminal cause, for the reason that the act of 1868 does not require the jurors selected under its provisions to be householders or freeholders, when section 4180 of the Code makes the absence of such qualification a ground of challenge for cause, we answer that the act of 1868 does not *prohibit* the selection of householders or freeholders for jury

service ; on the contrary it provides, as we have seen, that the officers in executing its provisions, shall " *strictly* " observe all the " qualifications and restrictions, with regard to competency and qualification " of the persons selected, as is required by section 4063 of the Code. These " qualifications and restrictions " are, in part, that the persons selected must be such as in the opinion of the officers making the selection are " competent to discharge the duties of grand and petit jurors with *honesty, impartiality,* and *intelligence,* and are *esteemed in the community for their integrity, fair character, and sound judgment.*" Now, if these requirements are obeyed, it will be next to impossible for the requisite number of grand and petit jurors to be selected in any county of the State, for service at any term of court, without the much larger proportion thereof being householders or freeholders. If these requirements are disregarded by the officers of the law, the greater is the reason for the existence and enforcement of section 4180 of the Code ; as one provision thereof protects persons whose lives and liberties are involved in a criminal prosecution, to the extent of allowing them to demand that their triers shall be householders or freeholders.

Instead then of there being irreconcilable conflict between the act of 1868 and section 4180 of the Code, or any part thereof, we hold that each can have harmonious action in its appropriate sphere ; to hold otherwise would, in our opinion, be to disregard some of the wise and long established rules for the construction of statutes.

It follows from what we have said that the juror, O. C. Young, was obnoxious to the challenge of the defendant for cause, and that the court erred in disallowing it; that the juror had rented land for the preceding twelve months did not make him a freeholder.

The record shows that the defendant peremptorily challenged this juror, after he had been put upon defendant by the court, and that before the panel was exhausted, he was allowed by the court *twenty-five* peremptory challenges, and also allowed to challenge some persons summoned from the bystanders, to complete the jury. Do these facts clearly show that the error of the court, was error without injury ?

To procure the reversal of a judgment of conviction for an error in point of law, it is not required that the defendant should show that he was actually injured by it. The rule in such a case is, that the appellate court will presume injury unless the record clearly shows, affirmatively, that none could have been sustained. Such is the rule in both civil and criminal cases (1 Brickell's Dig. 780, §§ 100–106) ; but the rule is more rigidly observed, if possible, in criminal than in civil cases, — especially in criminal cases of serious import. In

illustration of the correctness of this assertion, we refer to several cases decided by this court. In the case of *The State* v. *Hughes* (1 Ala. 655), the judgment-entry recited that the jury were selected, tried, and sworn, and that thereupon the defendant was arraigned and pleaded not guilty; and the judgment of conviction was reversed because the plea of the prisoner should have preceded the selection and swearing of the jury. In the case of *Parsons* v. *The State* (22 Ala. 50), the judgment of conviction was reversed, because the presiding judge discharged two of the jurors on account of sickness in their families, without the consent of the defendant, before the day appointed for his trial, and after the list of jurors summoned for his trial had been served upon him. These and other cases of a similar character decided by this court, show that the law is mild and merciful in its intendments towards those who are the objects of punishment.

That the defendant's peremptory challenges were not exhausted when the court erroneously overruled his challenge for cause, and that the defendant was afterwards allowed more than twenty-one peremptory challenges, cannot cure the error of the court complained of, nor show that it was error without injury. The defendant could not have known that the court as a matter of grace, and contrary to law, would have allowed him extra challenges. It was decided by this court in *Birdsong* v. *The State* (47 Ala. 68), PECK, C. J., delivering the opinion of the court, that if a juror is challenged for cause on a good ground, and the challenge is disallowed, and the juror is put upon the defendant, and he excepts to the ruling of the court, and then challenges the juror peremptorily, the defendant is entitled to the benefit of the exception, although his peremptory challenges be not exhausted before the jury is completed. And this identical question was made and decided the same way in the following cases : *Lithgow's case,* 2 Virginia Cases, 297 ; *Sprouce* v. *The Commonwealth,* Ib. 275 ; *Dowdy* v. *The Commonwealth,* 9 Grattan, 727 ; *The People* v. *Bodine,* 1 Denio, 282. In the last mentioned case the supreme court of New York says : " The court certainly would not be allowed to disregard a challenge for cause, and turn the party making it over to his peremptory challenges, nor can the fact that the party still has peremptory challenges at his command deprive him of any redress which the law would otherwise give for a violation of his right."

We cannot see that the defendant's case was not influenced prejudicially by the erroneous action of the court, complained of; and in the language of CHILTON, J., in *Flanagan* v. *The State* (19 Ala. 550), " in cases of this magnitude, involving the liberty of the citizen, the court will not be astute in speculat-

[Iverson v. State.]

ing upon the chances of injury to the accused, in order to sustain a conviction effected under such circumstances."

For the error we have named, let the judgment of the court below be reversed and the cause remanded. The appropriate order will be made requiring the warden of the penitentiary to deliver the defendant to the sheriff of Chocktaw county and requiring the sheriff to apply for and receive him, and retain him in custody, until he is discharged by due course of law.

MANNING, J. — I regret very much that we do not all agree in this case. The rule of interpretation of statutes involved in it is one not only of great importance, but in the frequency, nowadays, of legislative enactments, is of greater importance than formerly. Moreover, it is well defined, easy of application, and universally approved by judicial tribunals. The chief justice expresses in his opinion approbation of this rule.

The act of 1868 professes in terms to amend only section 4063 of the Revised Code. The effect of it, nevertheless, is to supersede the preceding section 4062. Thenceforth it is made the duty of the officers mentioned in the act, instead of selecting jurors from a list biennially obtained by the sheriff of the householders and freeholders of the county, to select them from the list of registered voters.

The act provides, however, that in making this selection, " all the qualifications and restrictions with regard to competency and qualification in the selection of jurors as is now required by law in this section, shall be strictly observed by said officers." That is, the law is not to be understood as abrogating those important qualifications and restrictions. The effect of this act, in the opinion of the chief justice, is to repeal section 4180 of the Code also, which secures to defendants in criminal trials the right to be tried by a jury of householders or freeholders. In my opinion, there is no such repugnance between the statutes as will prevent them from standing together.

A principal reason leading the chief justice to this conclusion is, that if these statutes are both allowed to have operation, then citizens who would be competent to constitute a grand jury, or to try civil causes, would not be competent to try a person under indictment for criminal offences. If that be the result of these statutes, it was competent for the legislature so to provide. So long as that body does not transcend its constitutional powers, its *sic volo, sic jubeo*, stands as an all sufficient reason for its enactments.

If, however, the inharmony referred to be considered a very serious matter, it can be avoided without any disregard of the

[Iverson *v.* State.]

rule of interpretation to which we refer.    The act of 1868 is *in pari materia* with several provisions of the Code, among them section 4180.    And while it provides that the officers shall observe, in their selection of jurors, all the qualifications and restrictions of the section repealed by it, it does not inhibit them from observing the other provisions of the law on the same subject.    And it seems to me it is much better to hold that among other qualifications, which they must regard, is that the jurors selected shall be householders or freeholders also.    This construction is much to be preferred to the setting aside of a cardinal rule in the construction of statutes, or allowing it to be obscured by refined and subtle distinctions.

If we are to indulge in conjectures as to what was the policy of the legislature in enacting the statute of 1868, and then by judicial construction to carry out that policy, (it seems to me,) it is more reasonable to hold that the purpose of the legislature was chiefly to provide that none but those who as registered voters had taken the stringent oath prescribed by the Constitution of 1867–8, and were therefore sworn to support it, and who were otherwise qualified, should serve as jurors, — than to hold that it intended to abolish qualifications which are distinctly prescribed by section 4180, without expressly doing so, or doing so by an act which is so repugnant to that section that they cannot stand together.

Upon the other point in the case :    Although the record shows that several more than the legal number of peremptory challenges were allowed to defendant :    This was a matter of grace ; and it does not appear that he was informed it would be done before he had exhausted his legal number, — at which time, he may have accepted a juror whom he desired to reject, under the apprehension that a more objectionable one would otherwise be forced upon him.

BRICKELL, C. J. (dissenting). — The repeal of statutes by implication is not favored, and when a discrepancy exists between a former and a later statute, such exposition of them will be made that they can stand together if practicable.    If there is a real inconsistency, or repugnancy, the former statute must yield to the later.    When the two statutes are parts of a body of statutes referring to a common subject matter, and construing them together, so that both can stand, will introduce inconsistency in the operation of the whole, the later statute should be deemed a repeal of the former, so that each part can be justly adapted to every other part, and the whole operate harmoniously.

The manifest intent of the amendatory act of 1868, is to remove household or freehold as a qualification of a juror, substituting in its place registration as a voter.    All statutes re-

[Iverson v. State.]

lating to juries and jurors, are *in pari materia*, and should be so construed as to accomplish this clear legislative intent.

The effect of the decision of the court is, to create a distinction between the qualifications of grand jurors, and petit jurors, and petit jurors in civil and in criminal cases, unknown hitherto in our laws, and unknown to the common law. Heretofore, at common law, and under our statutes, whoever was competent as a grand juror, was competent as a petit juror, in any case civil or criminal. Of course I refer to general competency, and not to competency as dependent on bias or interest in a particular case. When the question is of general competency — as, whether the person is under or above a particular age, or a householder or freeholder, or alien or citizen, — if he was competent as a grand juror, he was competent as a petit juror, in a civil, or in a criminal case. Under the opinion of the court, a registered voter, though not a householder or a freeholder, may as a grand juror make a presentment for murder, or any other criminal offence; and yet is not competent to sit as a petit juror, and render a verdict on any such accusation, though he is not a competent petit juror in all civil cases. Such an inconsistency in the operation of statutes, should not be the result of construction, but should depend on clear and unambiguous language, leaving no room for construction. When such an inconsistency arises from the operation of a former and a later statute, then, to avoid it, the later is held the repeal of the former.

Another result of the decision is, that the officers charged with the duty of selecting jurors, are compelled to select from the lists of registered voters, and are vested with a large discretion, in the discharge of this duty, among other reasons, to avoid the drawing and summoning of persons whom the court may *ex mero motu* exclude; or who are subject to exclusion on a challenge for cause. When they find a registered voter, of the requisite mental and moral qualifications, not above the prescribed age, they cannot refuse to select him because he is not a householder or a freeholder. They select him, and he is subsequently drawn and summoned; yet when called to discharge the highest duty of a juror's trust, he is excluded, as subject to challenge for cause, not because of his unfitness in the particular cause, but because of his incompetency in all such cases. The officers of the law are thus compelled to the vanity of selecting, drawing, and summoning, an incompetent juror.

In construing all general statutes like the amendatory act of 1868, they should be read in the light of the prevailing public policy. The governmental policy, state and federal, as indicated by legislation and constitutional provision, was the en-

largement of citizenship, and rendering citizenship the standard of right and privilege, and the test of duty and responsibility. That to this policy the statutes prescribing the qualifications of jurors should be made to conform, this statute removed household or freehold as a qualification, and substituted registration as a voter. The juror objected to, though not a householder or a freeholder, if a registered voter (and that does not appear to have been questioned), was competent, and the court did not err in so determining. I cannot, therefore, concur in the judgment for reversal.