# Ezell v. The State.

*Indictment for Murder.*

1. *Special jury law for Montgomery county; householder and freeholder not a requisite qualification.*—The act "To more effectally secure competent and well qualified jurors in the county of Montgomery," approved· February 21, 1887, (Acts 1886–87, p. 190), which, in section 3, provides that the jury list shall be selected from "the male residents of the county over 21 and under 60 years of age," and which, in section 18, expressly repeals section 4732 of the Code of 1876 (Code of 1886, § 4299), requiring the jury list to be selected from resident householders and freeholders of the county, and all other laws conflicting with the provisions of the act, also repeals in and for Montgomery county, the first ground of challenge enumerated in section 4331 of the Code of 1886, so as to make it no longer a requisite qualification for jury service in Montgomery county, that the person should have been "a resident householder and freeholder of the county for the last preceding year." (COLEMAN and HEAD, J. J., dissenting, on the ground that the said act does not repeal the first ground of challenge enumerated in section 4331 of the Code of 1886, since, as between the said special act for Montgomery county and the said first ground of challenge, there is no repugnancy or inconsistency, the objects and purposes of the two statutes being distinct and independent of each other, and there being no conflict in their application.*)

2. *Same; supplying place of juror before panel is exhausted.*—Section 10 of the act "To more effectually secure competent and well qualified jurors in the county of Montgomery," approved February 21, 1887, (Acts of 1886–87, p. 190), providing that, in a capital case, if the jury be not made up of those summoned and appearing, the court shall draw from the jury box enough names to complete the jury, the drawing by the court of another name from the jury box to supply the place of a juror mis-described in the notice served on the defendant, before the list of those summoned and appearing has been exhausted, is premature and erroneous.

3. *Same; same.*—Under the proviso of section 10 of the act approved February 21, 1887, that, should a juror drawn to complete the jury, after the list of those summoned and appearing has been exhausted, reside more than two miles from the court house, the court

---

*The proposition declared in this head-note, as decided by a majority of the court, has been overruled by the case of *Parker v. The State*, reported in this volume.

[Ezell v. The State.]

may, in its discretion, excuse him, the presiding judge has no authority to pass over or excuse any competent juror, whose name may be drawn, unless such juror "resides more than two miles from the court house."

4. *Service of venire upon defendant; misnomer of jurors.*—Where, in the notice of the *venire* served on the defendant, the names of A. J. McCullough and W. L. Smilie appeared as A. J. McCudough and W. L. Smile, the motion of the defendant to reject A. J. McCullough and W. L. Smilie as jurors, when put upon him upon the trial, should be granted.

5. *Summons of jurors; their exemption and qualification determinable by the court.*—The fact that the sheriff, in summoning jurors, supposes or knows that a person whose name appears on the *venire* is exempt or disqualified as a juror, does not excuse his failure to summon him; the question of exemption and qualification being determinable by the court.

6. *Charge by the court to the jury; when error to charge that defendant is guilty of murder.*—Where the defendant is tried under an indictment for murder, a judge is not justified in expressing his conviction as to the guilt or innocence of the accused; and it is error for him to instruct the jury that "so far as the evidence appears, it is murder; it is murder beyond all doubt. His own counsel do not claim that he is not guilty of murder."

7. *Same; definition of murder in the second degree.*—Any homicide, which would be murder at common law, if not attended by all the aggravating circumstances enumerated in the statute as constituting murder in the first degree, (Code, § 3725), is murder in the second degree; and a charge by the court to the jury asserts a correct proposition of law, which instructs them, that "murder in the second degree is the unlawful killing of another with malice aforethought, without the premeditation or deliberation of murder in the first degree.

8. *Same.*—In a trial of a defendant under an indictment for murder, a charge is rightfully refused that instructs the jury that "If the jury believe that the defendant struck the deceased in passion they can not find him guilty of murder. The presence of passion precludes the presence of malice, they can not exist in the same mind at the same time, nor can the same act be the outgrowth of both at once. If the defendant struck in passion there was no malice."

9. *Same; invasive of the province of the jury.*—On the trial of a defendant under an indictment for murder, a charge that instructs the jury that they "can not, under the indictment in which the defendant is accused, find him guilty of a higher crime than murder in the second degree," invades the province of the jury, and is rightfully refused.

APPEAL from the City Court of Montgomery.
Tried before the Hon. THOS. M. ARRINGTON.

The appellant was indicted, tried and convicted of murder, and sentenced to be hanged.

The bill of exceptions, after reciting that on the case being called both parties announced ready, then proceeds: "The court instructed the sheriff to proceed to draw the jury, but before a single name had been drawn from the hat the defendant moved the court to quash the *venire* upon the following ground: that on the list of the jury served on the defendant the names of A. J. McCullough, W. L. Smilie, W. F. Wilson and S. A. Wood, which were on the original *venire* and who had been summoned by the sheriff, did not appear, but that the names on the said list were A. J. McCudough, W. L. Smile, M. F. Wilson and S. A. Woods. The court after inspecting the said list served on said defendant overruled said motion and refused to quash the *venire*, but as to said S. A. Wood the court made the order hereinafter set out. The defendant then and there excepted to the overruling of the said motion. The court then ordered the name of S. A. Wood to be taken from the hat and to be struck from the list and ordered the board of jury commissioners to bring the jury box into court, whereupon Charlie Allen, one of the jury commissioners brought the jury box into court, and the court instructed the said Charlie Allen to open the jury box. The defendant objected to the jury box being opened. The court overruled the objection and the defendant excepted. The court then drew several names from the jury box, (three men whose names were drawn resided within two miles of the court house,) laying all the names drawn aside. The defendant objected to the court's laying aside the names drawn, because the juror living within two miles of the court house, whose name was first drawn, should be the juror summoned. Thereupon the court asked the deputy sheriff which of the names was first drawn, whereupon the deputy sheriff replied that J. M. McDonald's was the first name drawn. The court then ordered the sheriff to bring J. M. McDonald into court. The defendant objected, the court overruled the objection, and the defendant duly excepted. J. M. McDonald was brought into court, the court then ordered the sheriff to serve the defendant with the name of J. M. McDonald, the sheriff wrote the name of J. M. McDonald on a small slip of paper and handed it to the defendant. The defendant objected

to the service of the said J. M. McDonald's name at this time, because the name was irregularly drawn, and moved to quash the *venire* because he had not been served with a complete list of the jurors summoned to try his case before the day set for the trial thereof as required by law. The objection and motion were overruled, and McDonald's name was placed in the hat with the names of the other jurors, and the defendant-duly excepted. The name of W. L. Smilie being drawn from the hat the defendant moved to quash the *venire* because on the list of the jury served on the defendant the name of W. L. Smilie did not appear, but the name on said list was W. L. Smile. The court, after inspecting said list served on the defendant, overruled said motion, and defendant excepted. The defendant then moved the court to strike the name of W. L. Smilie from the list, and summon another juror in his stead. The court overruled the motion, and the defendant excepted. The sheriff then proceeded to draw the jury. The name of Gracie Niblett was drawn from the hat, the State announced satisfied. The defendant challenged the said Gracie Niblett for cause, on the ground that he was neither a freeholder nor a householder. The defendant showed by the jurors own testimony that he was neither a freeholder nor a householder. The court refused to allow this as a challenge for cause. The defendant excepted to such ruling, and challenged the said juror peremptorily. The name of W. C. Parks was then drawn from the hat and announced by the deputy sheriff 'not found.' The defendant objected to the sheriff's return upon the ground that W. C. Parks was found by the sheriff, but was not served with a summons. The defendant introduced sheriff Waller, who, being duly sworn, testified 'that he had found and seen W. C. Parks, but did not serve the summons upon him because he (the sheriff) thought Parks was too old and deaf to serve on a jury, but that he did not have the jury summons and was not engaged in summoning the jury in this case, which work was done by his deputy, B. C. Young, who had the summons in his possession and summoned the jury.' The State introduced B. C. Young, a deputy sheriff, who, being duly sworn, testified that he had the list of jurors for the purpose of summoning them, and did summon all the jurors who were summoned, but he did not summon the

said Parks because he did not find him. That he knew old man Parks, but did not know that his name was W. C. Parks, and had no idea that the summons was intended for him as he knew that he was too old and deaf to serve on a jury, and did not look for him, because he had heard that he was too old and deaf to serve on a jury. And the State also introduced in evidence the return of the sheriff showing that W. C. Parks was not found. Thereupon, the defendant moved to quash the *venire* upon the ground that the order of the court directed the sheriff to summon seventy-five (75) jurors, including the regular panel, and that the sheriff had failed to comply with the order. The motion was overruled, and the defendant excepted. The sheriff was directed by the court to lay aside the name of W. C. Parks and to proceed with the drawing, to which action of the court the defendant excepted. By this time 11 jurors had been selected. The State had made eight (8) peremptory challenges and the defendant twelve (12). The name of A. J. McCullough was drawn. The State announced satisfied, and the defendant challenged him peremptorily. The court refused to allow the defendant this peremptory challenge and placed the said McCullough on the jury, the defendant not challenging the said McCullough for cause, to which action of the court the defendant excepted. After twelve jurors were selected and before sworn, the *venire* not having been exhausted, the defendant objected to going on to trial, and to the jury, upon the ground, that he had been forced to select a jury from less than fifty jurors, twelve of the jurors summoned being out on another jury. The court overruled the objection, and the defendant excepted."

The testimony for the State tended to show that on the night of the murder Hester Ezell, the deceased, and her husband, Charles Ezell, the defendant, quarreled; that after quarreling he left the deceased and went to his house, and returned in a short while with a gun, which was unloaded; that the defendant and the deceased again commenced to quarrel, and they went in the direction of what is known as the "old chimney," near the city of Montgomery; that later they were seen going in the same direction, but were not then quarreling; that the next morning the deceased was found lying between the river and the "old chimney;" that she was

not dead but unconscious, and had three severe wounds on her head, produced by blows from a blunt instrument, either of which were sufficient to cause death ; that lying near were the broken lock and stock of the gun which Charles Ezell had ; that after living several hours without regaining consciousness, she died from the wounds above mentioned. The State introduced in evidence the confession of the defendant made two or three days after the killing, in which, after stating the circumstances, he admitted that he struck the deceased on the head with the stock of his gun, and broke the stock. The defendant's testimony, as a witness in his own behalf, with the exception of a few details, was substantially the same as was his confession introduced in evidence by the State.

The two portions of the court's general charge which were separately excepted to by the defendant, are copied in the opinion. The defendant requested the court to give the following written charges, and separately excepted to the court's refusal to give each of them as asked : (1.) "If the jury believe that the defendant struck the deceased in passion they can not find him guilty of murder. The presence of passion precludes the presence of malice, they can not exist in the same mind at the same time, nor can the same act be the outgrowth of both at once. If the defendant struck in passion there was no malice." (2.) "If the jury have a reasonable doubt that the killing was done in the heat of passion, they can not find the defendant guilty of murder." (3.) "The jury can not, under the indictment in which the defendant Charles Ezell is accused, find him guilty of a higher crime than murder in the second [degree]."

HILL, ROQUEMORE & ROGERS, for appellant.—The rulings of the court in the drawing and formation of the petit jury were erroneous.—Acts 1886-87, p. 190, § 10 ; *Steele's Case*, 83 Ala. 20 ; Acts of 1892-93, p. 917, § 2 ; *Iverson v. State*, 52 Ala. 170 ; *Aaron v. State*, 37 Ala. 106 ; *Birdsong v. State*, 47 Ala. 68 ; *Murphy v. State*, 86 Ala. 46; *Dotson v. State*, 62 Ala. 142 ; *Roberts v. State*, 68 Ala. 522; *Darby v. State*, 92 Ala. 9 ; *Posey v. State*, 73 Ala. 493; *McQueen v. State*, 94 Ala. 50 ; *Thomas v. State*, 94 Ala. 74 ; Code of 1886, § 4331 ; Bishop's Cr. Pro., Vol. 1, § 921. The first charge given by the court to the jury invaded

[Ezell v. The State.]

the province of the jury and was erroneous.—Cooley's Cons. Lim., 392; *McGuffie v. State*, 17 Ga. 514; *People v. Gastro*, 75 Mich. 127; *Steele v. State*, 83 Ala. 20. The second charge given by the court to the jury was erroneous, and should not have been given.—*Smith v. State*, 68 Ala. 430; *Ex parte Brown*, 65 Ala. 446; *Allen v. State*, 60 Ala. 20.

WM. L. MARTIN, Attorney-General, *contra*.

STONE, C. J.—It has long been the general law of this State that only freeholders and householders of the county are competent to do jury duty. Hence it was ground of challenge for cause if the person offered for such service was neither a freeholder nor a householder. But the act "To more effectually secure competent and well qualified jurors in the county of Montgomery," has, it is contended, changed that rule, so far as that county is concerned.—Act approved February 21, 1887—Sess. Acts 1886–87, p. 190. In section 3 of that act it is declared that the jury commissioners shall select the "jury list" from "the male residents of the county over twenty-one and under sixty years of age." The presiding judge held that the qualification of "freeholder or householder" was no longer requisite for jury service under the statute; and to this ruling defendant excepted. We refer also to act approved December 4, 1888, Sess. Acts, 1888–89, p. 139; Sess. Acts 1892–93, p. 917.

Our attention has been directed to *Iverson v. The State*, 52 Ala. 170, as being opposed to these views. Some expressions found in the majority opinion in that case, if considered without reference to the state of the statutes on which they were pronounced, give a seeming support to this contention. But the statutes were entirely different from those which must control the question we have in hand. This will be made plain by a brief reference to the statute law, as it existed before, and when the statute which gave rise to that discussion was enacted—December 31, 1868. Sess. Acts, 1868, pp. 550–1. Who were competent grand and petit jurors, and the mode of selecting them, before, and up to the enactment of, that statute, had been made known by sections 4062–3, of the Code of 1867. Section 4062 declared who should be placed on the list from which the selection

was to be made; namely, "all the householders and freeholders residing in" the county. From this list it was made the duty to select "the names of such persons as may [should] be thought competent to discharge the duties of grand and petit jurors for the county." Section 4063 directed what county officers should make the selection, announced certain disqualifications, and declared the rules and principles by which the officers should be governed in making the selections. It in no sense impaired the force of section 4062, which prescribed that householders and freeholders should constitute the list from which the selections should be made. Now, the act approved December 31, 1868, amended section 4063 of the Code of 1867, and, by constitutional provision, repealed that section as it theretofore existed. It made no reference whatever to section 4062 of that Code. It enacted an additional qualification for jury service; they must be "registered voters." The statute itself shows that there was no intention to abrogate, or dispense with any qualifications section 4062 had prescribed that jurors should have. The decision of the majority of the court in *Iverson's Case* need not be, and is not, assailed. We state what we think was the true ground to rest it on, namely : that the purpose of the amendatory statute was, not to dispense with any former qualifications of jurors, but to require an additional one. Had the legislature intended to give the statute a larger operation, they must needs have amended, not only section 4063 of the Revised Code, but section 4062 as well. This they did not do.

The jury law for Montgomery county, approved February 21, 1887—Sess. Acts, 1886–87, p. 190—has very different provisions. It does not refer to any section of the Code, and does not express any intention to amend or repeal any former law, save in its last section, 18. It declares, "That section (4732) four thousand seven hundred and thirty-two of the Code of Alabama, and all other laws and parts of laws, general and special, conflicting with the provisions of this act, be, and the same are hereby repealed ; but all laws now in force in relation to jurors, their drawing, selecting or qualification, not in conflict with this act, are hereby continued in full force and effect."

Now, what is section 4732 of the Code of 1876, the

Code of our statutes which was of force, when the jury law of Montgomery county was enacted, February 21, 1887, and which section was thereby repealed in express terms? It is the same section, verbatim, which is numbered 4062 in the Code of 1867, 4732 in the Code of 1876, and 4299 in the Code of 1886. It is the section which makes it the duty of the sheriff "to obtain biennially a list of all the householders and freeholders residing in his county," from which list must be selected "the grand and petit jurors." So that the law requiring that the list from which jurors are selected shall be householders and freeholders, is expressly repealed, so far as Montgomery county is concerned. This leaves Montgomery county without directions as to the classes of persons from which jurors shall be selected, save as said act of February 21, 1887, prescribes rules.

The statute of February 21, 1887, created a board of revenue for Montgomery county, and constituted it a board of jury commissioners. The sheriff, judge of probate and clerk of the circuit court are relieved of all duties in obtaining a list, selecting suitable persons for jury service, and drawing juries, alike grand and petit. These duties are transferred to the board of jury commissioners. Sections 3, 4 and 5 of the act contain the directions. Section 3 commands, "That said commissioners, at such meeting, shall select from the male residents of the county, over twenty-one and under sixty years of age, the names of all such persons, not exempt from jury duty, as, in their opinions, are fit and competent to discharge the duties of grand and petit jurors, with honesty, impartiality and intelligence." Sections 3, 4 and 5 then proceed to declare the further duties of the jury commissioners in preparing lists of the jurors selected, in drawing juries for the several courts from the list of "male residents of the county," &c. The words, "freeholders and householders," are no where mentioned in the statute; and section 4299 of the Code of 1886, being, as we have shown, expressly repealed as to Montgomery county, it follows that those qualifications cease to be essential to the eligibility of jurors in that county.

We apprehend that under the act we are construing— February 21, 1887—no one will deny that "the male residents of the county [Montgomery], over twenty-one

and under sixty years of age," constitute the body of persons from which the jury list must be selected. The statute, in terms, says so. There is no statute in existence, applicable to Montgomery county, which declares that they must be freeholders and householders. It follows that residents of the county, who are neither freeholders nor householders, will, in the nature of things, be drawn as jurors. They are competent for all jury service, and are eligible to be placed on juries in all cases. Throughout their entire service, either in selecting the jury list, or drawing juries for the courts, or for any special service the jury commissioners, and all others charged with the duty of drawing juries, are without authority to dictate as a qualification that the persons drawn shall be freeholders or householders. If the service proposed be that of grand juror, or the trial of a civil cause, no one can be heard to object to, or to challenge for cause, any resident of the county who may be offered, on the ground that he is neither a freeholder nor a householder. Can we hold that a person, who is eligible to be placed on the jury list of Montgomery county, can not be objected to for cause when tendered as a grand juror, or as a juror in a civil case, yet may be challenged for cause in a criminal prosecution, on a ground which does not authorize the court or the jury commission to strike or withhold his name from the jury list or panel? We hold that in the repealing clause of the act of February 21, 1887, not only is section 4299 of the Code of 1886 repealed in and for Montgomery county, but also the first ground of challenge enumerated in section 4331 in the same Code. This, because that ground of challenge conflicts with the later enactment. The city court did not err in disallowing the challenge of the juror, Gracie Niblett, for the cause assigned. He was a competent juror under the statutes applicable to Montgomery county.

When the court rejected S. A. Wood as a juror, because his name did not appear on the list of the *venire* which had been served on the defendant, the presiding judge proceeded at once to supply his place, by drawing another name from the jury box, and placing it in the box or hat from which the jury was to be completed. This was done before the panel had become exhausted; and the defendant excepted to this action. There was

also a question raised as to the duty of the court to take
for this service, and to be offered for acceptance or rejec-
tion, the first name drawn of a person who resided with-
in two miles of the court-house. This particular duty
or service is provided for in the proviso to section 10 of
the act approved February 21, 1887.—Sess. Acts 1886–87,
p. 195. Its language is, "that if at the time appointed
for the trial of the capital case, a jury should not be
made of those summoned and appear, the court shall
draw from the petit jury box a sufficient number of
names to complete said jury; *provided*, that should any
juror so drawn reside more than two miles from the
court house, the said juror may, in the discretion of the
presiding judge, be relieved from attendance on said
trial." This provision of the act of 1887 has never been
changed.

The drawing in this case to supply the place of the
juror Wood, misdescribed in the notice served on the
prisoner, was premature. Such drawing is not author-
ized, unless there is a failure to complete a jury of twelve
from those who are summoned and who appear. It can
not be known there will be such failure, until all the
names are drawn from the box or hat, and the panel in
that way exhausted. Nor does the statute give the pre-
siding judge authority to pass over, or excuse any com-
petent juror whose name may be drawn, unless such
person "resides more than two miles from the court-
house." In drawing the juror at the time it is shown to
have been done in this case, the city court erred. The
statute should be conformed to.—*Murphy v. State*, 86
Ala. 45; *Steele v. State*, 83 Ala. 20.

Fearing our silence might be misinterpreted, we will
add, that the names of the jurors, Smilie and McCul-
lough, appear to have been so imperfectly set forth in
the notice of the *venire* served on the defendant, that de-
fendant's motion to reject them should have prevailed.
This, however, would not necessarily lead to a quashal
of the *venire*.

The record is not very clear as to the reason why the
juror, W. C. Parks, was not summoned. If it was be-
cause he was supposed, or even known, to be exempt, or
disqualified, that was not sufficient excuse for the sheriff
to fail to summon him. That was a question for the
court to consider of.

In the charge to the jury the court said : "So far as
the evidence appears, it is murder ; it is murder beyond
all doubt. His own counsel do not claim he is not guilty
of murder." In Cooley, Cons. Lim. (6th Ed.), 392,
that great jurist employs this language : "A judge is
not justified in expressing his convictions to the jury
that the defendant is guilty under the evidence ad-
duced." Murder, with us, has different degrees. If
ounsel, in argument, should concede the client's guilt
of the offense charged, and only contend for a mitigation
of the crime to the less heinous degree, we do not doubt
the right of the court to repeat to the jury what counsel
had admitted. Beyond this the court should not go. As
shown in the record, the court erred in giving this
charge.

The court also charged the jury as follows : "Murder
in the second degree is the unlawful killing of another
with malice aforethought, without the premeditation and
deliberation of murder in the first degree." There can
be no question that the facts hypothesized in this charge
would constitute murder in the second degree. Any
homicide which would be murder at common law, if not
attended by all of the aggravating circumstances enu-
merated in our statute as constituting murder in the first
degree, is murder in the second degree.—Code of 1886,
§ 3725. "Willful, deliberate, malicious and premedi-
tated killing," constitutes one species of murder in the
first degree, under our statutory classification. To come
within this class, all of these properties, or qualifying
adjectives must be found to have co-existed.—*Mitchell v.
State*, 60 Ala. 26. The absence of any one of them,
unless necessarily implied in the facts proved and found
to exist, would reduce murder to the second degree.
Hence, the absence of "premeditation and deliberation,"
as asserted in the charge, or the absence of either of
them, would reduce the offense to the second degree. So,
the absence of willfulness and maliciousness, or either of
them, unless, as we have said, necessarily implied in the
facts found, would have the same effect. In charging on
the subject we are considering, it would be well to state
all the qualifying adjectives, for the absence of any one
of them reduces the homicide below the grade of murder
in the first degree, unless it falls within one of the other
classes of murder in the first degree, such as poisoning,

lying in wait, &c.    But, as we have said, the charge asserts a correct proposition of law.    If there was apprehension it might mislead, an explanatory charge might have been asked.

The charges asked for defendant were, each of them, rightly refused.

Reversed and remanded.

COLEMAN, J., *dissenting*.—The defendant was indicted and tried for murder and convicted of murder in the first degree.    The question of importance is, whether it was good ground for challenge that the juror Niblett was neither a free-holder nor householder.    Section 4331 of the Criminal Code, sub-division 1, provides that, "It is good ground for challenge by either party,—1. That the person has not been a resident householder or freeholder of the county for the last preceding year."    It is conceded in argument that unless this provision is repealed by special act for Montgomery county, the trial court erred in refusing to allow the defendant to challenge the juror for cause.

The act of February 21st, 1893, p. 917 of the Acts of 1892-93, and the act of December 4th, 1888,—Acts of 1888-89, p. 139—and the act of 1886-87, p. 190, are not materially different, so far as they bear upon the question under consideration.    Section 3 of the act of 1886-87 enacts, "That said commissioners, at such meeting, shall select from the male residents of the county over twenty-one, and under sixty years of age, the names of all such persons, not exempt from jury duty, as in their opinion are fit and competent to discharge the duties of grand and petit jurors. with honesty, impartiality and intelligence," &c.    The act of 1888-89, *supra*, was amendatory of the act of 1886-87, but in no way altered the foregoing provision.    The act of 1892-93, *supra*, seems to be an independent act, complete of itself.    It makes no referance to any other act or law, either general or special, and the first section was evidently copied from section 3 *supra* of the act of 1886-87.    Neither of the two later acts undertakes to legislate upon the right of challenge or prescribe or regulate the ground of challenge.    It is not pretended that section 4331, sub-division 1, of the Code, *supra*, is expressly repealed, but the contention is, that the provision quoted from section 3

8

of the act of 1886-87, *supra*, by implication repeals sub-division 1 of section 4331, *supra*; that the two are inconsistent with each other, and that to allow sub-division 1 to stand as ground for challenge would defeat the clear legislative intent of the act of 1886-87. We do not assent to this contention. · The established rule of construction of statutes does not favor the repeal of statutes by implication. Unless there is that repugnancy or inconsistency, that in executing one, violence is done to the other, the two must stand, and it can not be said that the statutes bear this relation to each other, when there are different fields of operation for both. It can not be doubted that the legislature is fully empowered to prescribe the qualification of grand and petit jurors; and it is equally within its constitutional authority to prescribe grounds of challenge for cause for both parties, and peremptory challenges. Suppose the act of 1886-87, with proper caption to cover this provision, after providing as it does in section 3, "that the commissioners shall select from the male residents of the county, over twenty-one and under sixty years of age, the names of all such persons, not exempt from jury duty, as, in their opinion, are fit and competent to discharge the duties of grand and petit jurors," &c., had expressly declared that all the grounds of challenge for cause enumerated under section 4331 shall apply to trial of cases under the act, would any court hold that the provisions were so repugnant and inconsistent that both could not stand? Suppose the statute for Montgomery county had been enacted as a general law and substituted for section 4299 of the Code (4732 of the Code of 1876) could it be contended that such amendment repealed section 4331 of the Code which relates only to challenges for cause? Would it not be clear, that while the legislature enlarged the body of persons from whom jurors were to be selected to such persons residents of the county, between twenty-one and sixty years of age, as in the opinion of the commissioners were fit and competent, yet it preserved to persons on trial the right, at their option, to be tried only by a jury possessed of certain prescribed qualifications? The juror thus selected might be competent to be put upon a party, and the ·cause of challenge might be waived, but if the party saw proper to demand a jury of householders or freeholders the law accorded to him the right.

It is in the exercise of the same legislative power and upon like principle that the law allows a certain number of peremptory challenges, notwithstanding the juror may possess every statutory qualification. We think it manifest from reading section 10 of the act of 1886-87, that it was the intention of the legislature to preserve and continue in force all the grounds of challenge for cause, contained in the general law. The last clause of that section is in the following words : "*In addition to the challenges for cause, allowed by law*, the defendant shall have the right to peremptorily challenge twelve such jurors, and the State eight of them." Here we find an express change of the general law as to the number of peremptory challenges, but a positive, unmistakable recognition of the "*challenges for cause, allowed by law.*"

Section 4331 is as follows : "Challenge for cause. It is good ground for challenge by either party, 1st. That the person has not been a resident householder or freeholder of the county for the last preceding year.

2d. That he is not a citizen of Alabama.

3d. That he has been indicted within the last twelve months for an offense of the same character as that with which the defendant is charged.

4th. That he is connected by consanguinity within the ninth degree or by affinity within the fifth degree (computing according to the rules of civil law) either with the defendant or the prosecutor, or the person alleged to be injured.

5th. That he has been convicted of a felony.

6th. That he has an interest in the conviction or acquittal of the defendant, or has made any promise or given any assurance that he will convict or acquit the defendant.

7th. That he has a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict.

8th. That he is under twenty-one, or over seventy years of age.

9th. That he is of unsound mind.

10th. That he is a witness for the other party."

Here are ten enumerated statutory grounds for challenge, and they are none the less statutory because that some were grounds of challenge at common law. What argument can be presented that the first of the grounds for challenge was repealed, and the second and third

and fifth and tenth, as well as others, were not also re-
pealed? The general qualifications of jurors and the
statutory grounds for challenge are entirely independent
of each other. In the Code they are under different
headings and in different Articles. Can it be said that
the commissioners, in selecting "such persons  *  *  as
in their opinion are fit and competent to discharge the
duties of grand and petit jurors with honesty, impar-
tiality and intelligence," at the same time are author-
ized to determine challenges for cause? or that a person
who in their opinion is fit for the duty of grand and
petit jurors, is not subject to the statutory challenges
for cause? The act provides that the commissioners
"shall select from the male residents of the county,
over twenty-one and under sixty years of age," &c. The
statute says "from the male residents." The cause of
challenge is, that if the person is not a "*citizen*" of the
State, it is ground of challenge. Are we to hold that a
mere resident, without regard to length of time of resi-
dence or citizenship of the State, is not subject to chal-
lenge for cause with the positive enactment that he may
be challenged for cause? We know of no decision of a
State court, and certainly no principle or decision at
common law, which supports the proposition. The com-
missioners may in their opinion deem a person under an
indictment for a similar offense "fit" to discharge the
duties of grand and petit jurors. It may be an indict-
ment preferred by a grand jury composed in part of
such persons under our statutes would be valid, but is
the statutory ground of challenge for cause abolished
which applies only to petit jurors? It required no legis-
lation, to give a right to challenge *propter defectum*, if the
person summoned did not possess the legal qualifica-
tions. It was cause for challenge at common law, and
is cause for challenge now, independent of statute, but
when the legislature enacts certain statutory grounds as
cause for challenge, applicable solely to petit jurors, it
requires either a positive repeal of the act or such legis-
lation relating to the right of challenge which may be
asserted at the trial, as is inconsistent with the statute,
prescribing the grounds of challenge. Can it be said
that the statute which authorizes the jury commission
to select such male residents, between twenty-one and
sixty years of age, as in their opinion are "fit" and

competent, to discharge the duties of grand and petit jurors, a duty performed months, perhaps, before the trial, without more, repeals the statute which gives the right of challenge of a petit juror to be asserted at the time of the trial? It has been held from time immemorial, that if a person is convicted by a jury composed of one or more persons not possessing the prescribed qualifications of jurors, as non-age, an alien, non-freeholder, that is no ground for setting aside the verdict, or for granting a new trial after conviction.—*Rexine v. Sullivan*, A. & E. Rep. 831; *Rex v. Sutton*, 8 Barn. & Cres. 417; *Wassum v. Feeney*, 121 Mass. 93; 23 Amer. Rep. 258; *State v. Jackson*, 27 Kansas 581; 41 Amer. Rep. 424; 1 Bishop Criminal Procedure, § 932; *Rash v. The State*, 61 Ala. 94.

The enumeration of certain grounds of challenge in the statute in no way abolishes the common law right of challenge for cause, or the right to challenge for cause secured by the constitutional provision, "That the right of trial by jury shall remain inviolate."—*Brazleton v. The State*, 66 Ala. 97; *Smith v. The State*, 55 Ala. 1; *State v. Marshall*, 8 Ala. 302. That a person was a member of the grand jury which preferred the indictment is cause for challenge, though not enumerated as a cause in the statute.—*Birdsong v. The State*, 47 Ala. 68.

In Bishop's Criminal Procedure, section 852, it is said : "Not in all respects, it appears, are the disqualifying rules for grand jurors the same or so strict as for petit jurors." Whether at common law a freehold interest was a necessary qualification for a grand juror is not clear, but we think it is clear, that at common law this was a ground for challenge for cause. Hawkins Pleas of the Crown, vol. 2, chapter 43, section 12, p. 572, also chapter 25, section 21, and the cases cited, support the proposition, that the want of a freehold interest was ground for challenge for cause at common law. In the case of the *State v. Easter*, 30 Ohio State 549, the court uses this language : "It is claimed by counsel that the qualifications of a grand and petit juror are the same. The position is not tenable. Both must be good and judicious persons; both must be electors. But there are other requisites for the petit juror, not necessary for the other. The various laws on the subject lay down quite a number of causes for which the petit

.juror may be challenged." The court then cites the statute prescribing the grounds of challenge for cause, just as we have done, and concludes: "It is obvious that this must apply to the petit juror who tries the case, and no other." The further argument of the court in that case is conclusive. The case of *Byrd v. The State*, 1 How. (Miss.) p. 176, is additional authority. We regard the opinion of the court in both cases as fully sustaining our position.

We can not assent to the argument, that a statute which authorizes the commissioners to select from the male residents of the county over twenty-one and under sixty years of age all such persons, as in their opinion, are fit and competent jurors, does or was intended, in the least, to alter the right of challenge secured by the constitution, the statute, or common law. We have numerous adjudications in our own court involving like principles.

Section 4299 of the Code of 1886 is the same as section 4732 of the Code of 1876, and is as follows: "It is the duty of the sheriff of each county to obtain biennially a list of all the householders and freeholders residing in his county, from which list must be selected, as hereinafter provided, the names of such persons, as may be thought competent to discharge the duties of grand and petit jurors for the county." It will be seen that this statute prescribing the qualification of grand and petit jurors makes no reference to the length of time of residence in the county of the householder and freeholder. One who has resided any length of time in the county, who is a householder and freeholder, possesses the necessary qualifications for a grand or petit juror. The ground of challenge is (section 4331) that "the person has not been a resident householder or freeholder of the county, for the last preceding year." No one has ever contended before that the section prescribing the qualification of jurors, repealed this right of challenge. Section 4299 makes no allusion to the age of the juror, all that is necessary is that he be a freeholder and householder of the county. The next section, 4300 of the Code of 1886, which was section 4733 of the Code of 1876, provides that "no person must be selected who is under twenty-one or over sixty years of age." Notwithstanding this provision that no person

[Ezell v. The State.]

over sixty years of age must be selected, it has been
universally held in this State, that, if a person over
sixty years of age and under seventy years of age, was
drawn, such person was not disqualified and not subject
to challenge for cause.    This was held in *Williams' Case,*
67 Ala. 183;  *Spigener v. State,* 62 Ala. 382.    In the
Williams case the decision rested upon the section of the
Code which provides that seventy years of .age was a
ground of challenge, and that being over sixty years
was not a disqualification.    Another argument is found
in the decisions of this court, and the universal practice
under the general jury law of the State, as declared by
the act of 1886-87, p. 151; Cr. Code, p. 131.    Section
4732 of the Code of 1876, 4299 of the present Code, was
expressly repealed (as was done by the Montgomery
act), and we have in section 3 of that general jury law
the following provision: "That said commissioners
shall select from the male residents of the county, over
twenty-one and under sixty years of age, who are house-
holders or freeholders, the names of all such persons,
not exempt from jury duty, as, in their opinion, are fit
and competent to discharge the duties of grand and
petit jurors, with honesty, impartiality and intelli-
gence;" and in section 9 of the act, it provides that the
petit juries shall be organized from the list thus select-
ed.    The only qualification for a juror under this act, is
that he be a male resident, householder or freeholder,
over twenty-one and under sixty years of age.    By what
process of reasoning can it be said, that section three of
the Montgomery act, which provides that the list· shall
be made up of residents of the county over twenty-one
and under sixty years of age, repeals the statute by im-
plication, which declares that a person who has not
been a resident householder or freeholder may be chal-
lenged for cause, and that the general law, which we
have cited, does not have the same repealing effect?
Under the general law the juror is competent, if he be
a resident householder or freeholder, without reference
to length of time of residence, the ground of challenge
being that he must have been a resident householder or
freeholder of the county *for the last preceding year.*
There is as much repugnance between the general law,
which prescribes as a qualification only that the person
be a freeholder or householder, and the statute which

[Ezell v. The State.]

declares he may be challenged for cause unless he has been a resident householder or freeholder *for twelve months,* as between the Montgomery county statute which prescribes as a qualification that he shall be a resident of the county and the cause of challenge on the ground that he is not a freeholder or householder. And yet it has never been questioned, that this ground of challenge remained in full force under the general law. Argument upon argument might be made, but more is unnecessary. To hold contrary would overturn a vast array of decisions in this court, as well as that of other courts, and the principles of law universally recognized in text writers, some of which have been cited.

The case of *Iverson,* 52 Ala. 170, is a direct authority upon the very question at issue. We quote: "Although both statutes relate to some extent to the same subject matter, (the selection and qualification of jurors), yet each has a separate and distinct field of operation. One provides for a general annual selection of persons to serve as grand and petit jurors; the other prescribes the grounds of challenge for cause of jurors drawn for the trial of criminal cases only. One is general in its provisions; the other relates to a special class of cases." This is the principle upon which the decision rests, and is the true ground. It is a mistake to hold that the decision can be upheld on the ground that the act of 1868, amendatory of section 4063 of the Code, did not vary the qualifications of jurors as provided in another section of the Code. The amendatory act of 1868 has this provision: "Provided, that all the qualifications and restrictions with regard to competency and qualification in the selection of jurors as is *now required by law in this section,* shall be strictly observed by said officers." The opinion and conclusion in the *Iverson Case,* rest upon the proper principles, and is sustained by authority and well recognized principles, to be applied to the construction of statutes.

We have considered the question at some length because of the effect of the decision of the court upon the general jury law of the State. The act of the legislature of February 28th, 1889—Acts 1888–89, p. 77—amendatory of the general jury law of the State, has a provision precisely similar to section three of the Montgomery act; and if the same rule of construction is to be ap-

plied to the. general law of the State, as given to the
Montgomery act, that old landmark of the common law,
which allowed as a ground of challenge for cause that
the juror was not a freeholder or householder—which
has been renewed and invigorated by statutory enact-
ment, and carefully guarded by the decisions of this
court from the organization of the State, to the present
time—will be utterly obliterated, and that by a rule of
construction, which, in our opinion, finds no support in
principle or precedent.    The law is well stated in 23
Amer. & Eng. Encyc. of Law, p. 482, in the following
language :   "In the absence of any repealing clause
[and there is none here] it is, however, necessary to
the implication of a repeal that the *object* of the statutes
as well as the *subject* be the same ; if they are not, both
statutes will stand, though they refer to the same sub-
ject.

In my opinion the majority of the court has failed to
observe the distinction between a statute intended to
prescribe the qualifications requisite for grand and petit
jurors generally, and a statute intended to apply to petit
jurors solely, securing rights and privileges, which a
person charged with a capital offense, at the time he
is put upon his trial, may assert at his option for his,
benefit and protection in relation to the special juror
summoned for the particular trial.    The object and pur-
poses of the two statutes are distinct, independent of
each other and there can be no conflict in their applica-
tion.    The challenge for cause should have been sus-
tained.

HEAD, J., concurs in the reasoning and conclusion of
this opinion.