[Crim. No. 1370. In Bank.—August 14, 1907.]

## THE PEOPLE, Respondent, v. MORRIS BUCK, Appellant.

CRIMINAL LAW—APPEAL—REFUSING TO POSTPONE TRIAL.—An order denying the defendant's motion for a postponement of the trial is reviewable on appeal from the judgment of conviction, and is not the subject of a separate appeal.

ID.—BILL OF EXCEPTIONS.—Under sections 1173 and 1174 of the Penal Code, to obtain a review of an order denying a continuance in a criminal case, it is necessary to incorporate the motion, evidence, and ruling in a bill of exceptions.

ID.—CURE OF ERROR IN REFUSING CONTINUANCE—ABSENCE OF WITNESSES. —In a prosecution for murder any error in refusing a motion of the defendant for a continuance, in order to allow him to secure the attendance of material witnesses in support of his defense of insanity, is cured by the subsequent attendance of such witnesses at the trial.

ID.—DEPOSITIONS OF NON-RESIDENT ALIENISTS.—It is not an abuse of discretion or a denial of right to refuse to postpone a criminal trial in the courts of California until the depositions of non-resident alienists based upon hypothetical questions can be obtained in support of the defense of insanity.

ID.—LOCAL PREJUDICE—SECURING JURY.—The refusal to postpone a trial for murder on the ground that local feeling was inflamed against the prisoner is not error, when the absence of any such feeling is established by the fact that a jury was filled from the panel in attendance on the day the trial began.

ID.—INSANITY—QUESTION FOR JURY.—It is for the jury to determine, under the instructions of the court, whether or not the defendant was insane at the time of the homicide, when the evidence on that issue is conflicting.

ID.—INSTRUCTIONS—WEIGHT OF EVIDENCE.—It must be presumed that a jury always understand that it is their duty to give to any evidence the weight to which it seems entitled, and the refusal of the judge to make that comment on any particular item or line of evidence cannot be supposed to prejudice the party offering it.

ID.—INSTRUCTION ALREADY GIVEN.—The refusal to give a requested instruction, the substance of which has already been given, is not error. .

ID.—INSTRUCTION AS TO OPINION EVIDENCE.—Where the defense of insanity is interposed to a charge of murder, it is not error to refuse to instruct the jury that "The abstract opinion of any witness, medical or of any other profession, is not of any importance. . . . No judicial tribunal would be justified in deciding for or against the legal responsibility of one charged with insanity upon the mere opinion of witnesses, however numerous or respectable." There is no rule of law such as that embodied in the instruction.

ID.—IRRESISTIBLE IMPULSE—MURDER.—Where the defense of insanity is interposed to a charge of murder, the court may instruct the jury as to the law of insanity fully and with all its special limitations and qualifications, and in that connection may point out that "irresistible impulse" to do an act known by the perpetrator to be wrong does not relieve him of its legal consequences.

ID.—LIMITING ARGUMENT—NEW TRIAL—ARRAIGNMENT FOR SENTENCE.— Limiting counsel for the defendant to one hour for the argument of the motion for a new trial in this case, and refusing to postpone the arraignment for sentence, was not an abuse of discretion.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. B. N. Smith, Judge.

The facts are stated in the opinion of the court.

A. D. Warner, for Appellant.

U. S. Webb, Attorney-General, Henry T. Gage, and W. I. Foley, for Respondent.

BEATTY, C. J.—The defendant, having been sentenced to death upon conviction of murder, appeals from the judgment and from an order denying his motion for a new trial. He has also given notice of an appeal from an order denying his motion for a postponement of the trial; but since the ruling upon that motion is reviewable on appeal from the judgment, there is no necessity and no provision for a separate appeal. (Pen. Code, secs. 1173 (subd. 2), 1237.) To obtain a review of an order denying a continuance in a criminal cause, it is necessary to incorporate the motion, evidence, and ruling in a bill of exceptions (Pen. Code, sec. 1174), and one of the questions here presented is whether it appears

by this record that any such bill of exceptions was ever
settled or allowed.

The information charging the defendant with the crime of
murder was filed on February 3d. On the 5th he was ar-
raigned, and being without counsel, a member of the Los
Angeles bar, who represents him on this appeal, was appointed
by the court to conduct his defense, and time to plead extended
to the 7th. On that day he filed a demurrer to the indictment,
which being overruled he entered his plea of not guilty. The
cause was then set for trial on March 12th.

Assuming for the present that the affidavit subsequently
filed in support of the motion for a postponement of the trial
(a copy of which is printed in the transcript) can be treated
as a part of the record, it appears that counsel for defendant
protested very earnestly on February 7th against the fixing
of so early a date as March 12th for the trial, upon the
ground that his conference with defendant on the previous
day had satisfied him that the defendant was insane at the
date of the homicide, and that his trial on the 12th of March
would not allow sufficient time to procure the necessary evi-
dence as to his personal and family history, or to prepare his
defense in other particulars. This objection was, however,
overruled by the court, and on March 12th, when the cause
was called for trial, defendant made his motion for a post-
ponement, based upon the affidavit in question.

Many objections of a purely technical character are urged
by counsel for the people to any consideration of this affidavit,
and if we were disposed to rule with technical strictness in
a matter of this kind we might be justified in holding that
it is not a part of the record, because not strictly and formally
included in the bill of exceptions. But in view of the facts
that the defendant was without counsel, that counsel appointed
by the court was new to the state and unfamiliar with our
practice in criminal cases, and that matters which he was
clearly entitled to have had included in the bill of exceptions
were probably not so included through mere inadvertence,
we are unwilling in a case of such serious import to rest our
decision upon grounds so purely technical as that matters
which ought to have been shown by the bill of exceptions
appear only in the minutes of the court, and that exceptions
to the orders denying the continuance and the new trial

were not formally entered at the time the rulings were made.

Disregarding, therefore, the objections referred to, assuming that exception was taken to the order denying a continuance of the trial, and treating the affidavit submitted in support of the motion as part of the record, we proceed to consider whether there was any error or abuse of discretion in refusing the continuance.

The simple facts of the case are that the defendant applied to a lady by whom he had formerly been employed as a coachman for a loan or gift of money with which to establish himself in business. She did not answer his letter immediately, and he went to her house in the city of Los Angeles armed with a knife, a derringer, and a revolver. Learning that she was not at home, he sat down on the front porch to await her return. When she came she entered the house by a side door and was informed that the defendant was waiting to see her. She went out to see him, and he renewed his request for money. She excused herself upon the ground that there were so many demands upon her purse, and for some reason—probably because she was alarmed—went in the house and telephoned for her coachman. When she came out again, defendant asked her whom she had rung up, and she told him. Some other conversation ensued, and the defendant, among other things, told her he was desperate. In the end he shot her twice, causing her death within a few moments. He then, in the presence of several persons who had been attracted to the scene, put his pistol to his own head and inquired, "Gentlemen, shall I do it?" He did not fire, but sat down with his pistol in his lap and waited till an attempt was made to arrest him, when he ran and took refuge in an ice-cream parlor, where he was soon after taken in custody. Upon these facts it was very clearly a case of deliberate murder, unless the defendant was insane, and accordingly his sole defense was insanity.

The affidavit of defendant's counsel, which was filed on the twelfth day of March, in support of his motion for a postponement of the trial, showed proper diligence upon his part in preparing his defense, and was intended to show that it would have been impossible to secure the attendance of material witnesses on the point of defendant's personal and

family history, or the depositions of distinguished alienists,
who, in answer to a hypothetical question based upon facts.
which counsel expected to prove, had stated that the defendant
—assuming those facts to be capable of proof—was cer-
tainly insane, and must have been insane at the date of the
homicide.

One of these alienists was Dr. I. E. Cohn, of the Napa
asylum, and the other was Dr. W. A. Jones, of Minneapolis,.
Minnesota. The only witnesses on the point of personal
and family history whose attendance had not been secured
were William and Earl Buck, brother and nephew of the
defendant, for whom subpœnas had been issued, but who
had not been found. On the other hand, the affidavit showed
that the defendant was prepared with a very considerable
amount of evidence of persons who had known the defendant
and his family, and of public records which showed that
about three years prior to the homicide the defendant had
been adjudged insane upon the report of a commission ap-
pointed in a proceeding instituted under the laws of this state.
Counter affidavits were filed on the part of the people, but
they are not included in the record or printed in the transcript.
Counsel for appellant seems to consider that the absence of
these counter affidavits gives him serious grounds of com-
plaint; but we cannot see how he is injured by their omission,
since in their absence we can only assume that the material
averments of his affidavit were uncontradicted, or, as is more
probable, that they were deemed superfluous in view of the
disclosures at the trial.

But for these disclosures it might be a serious question
whether the denial of a continuance was not an error. It
turned out, however, that both William and Earl Buck at-
tended the trial and testified in favor of the defendant, and
Dr. Cohn, of the Napa asylum,—one of the two alienists who
had stated in reply to the hypothetical question that in his
opinion the defendant was insane,—also attended, in obedience
to a subpœna issued at the instance of the defendant, and
upon the usual order of the court for the attendance of wit-
nesses residing out of the county. He was in court on the
day the motion for continuance was made, and was present
throughout the trial. In the intervals of the trial he visited
and examined the defendant in jail, with the result that he

was not called as a witness by the defendant, but testified in rebuttal that he was sane at the time of the trial and at the date of the homicide. It is probable that the ruling on the motion for a postponement of the trial was made with a knowledge that Dr. Cohn and William and Earl Buck were or would be present in time to give their testimony, in which case it was clearly right. But however this may be, it was clearly not injurious in any view in which it could be claimed to have been erroneous. It is true the deposition of Dr. Jones, of Minnesota, was not obtained, and probably could not have been obtained for the trial with any amount of diligence, but it cannot be held an abuse of discretion or a denial of right to refuse to postpone a criminal trial in the courts of California until the depositions of non-resident alienists based upon hypothetical questions can be obtained in support of the plea or defense of insanity.

Nor did the court err in refusing to postpone the trial because of an allegation in the affidavit that local feeling was inflamed against the prisoner, and that eminent special counsel had been retained to assist the prosecution. The absence of any wide-spread feeling against the prisoner is shown by the fact that a jury was filled from the panel in attendance on the day the trial began, and a continuance would not have deprived the people of the aid of the special counsel or freed the defendant of their opposition.

On the trial much evidence was introduced tending to prove that defendant was insane. There was evidence that his father's father had been insane; that his father had died a few years before of some disease affecting the brain; that his mother's mother had been an inmate of an insane asylum of which his mother had been a matron; that defendant himself had at one time been adjudged insane, but discharged after a few days' detention; that after his discharge he had taken up a wandering life, tramping from place to place, and working desultorily in various menial employments. Opposed to this was the testimony of a number of experts who as the result of personal examinations and the evidence in the case were all of the opinion that the defendant was perfectly conscious of what he was doing at the time of the homicide and fully aware of the nature and of the criminality of his acts. Upon this evidence it was a case for the jury to determine,

under the instructions of the court, whether the defendant was insane or not.

It is contended that the court erred not only in the charge given to the jury, but in refusing and modifying instructions requested by the defendant. The twelfth instruction so requested was to the effect that the testimony of non-experts was recognized as proper in support of the defense of insanity, stating the reason of the rule. The concluding clause of the instruction was as follows: "You are not to be bound by the statement or testimony of such witnesses, neither are you justified in disregarding them. It is your duty to give them such weight as they are entitled to." The court in giving this instruction omitted the language quoted. No reason occurs to us why so mere a commonplace should not have been allowed to stand, but there seems as little reason why it should have been requested. It must be presumed that a jury always understand that it is their duty to give to any evidence submitted to them the weight to which it seems entitled, and the refusal of the judge to make that comment on any particular item or line of evidence cannot be supposed to prejudice the party offering it.

The thirteenth instruction requested by defendant was to the effect that in weighing and considering expert testimony it is the duty of the jury to exercise their own intelligent judgment, and to allow it such weight only as after careful scrutiny they may deem it deserving of. A final clause in this instruction was as follows: "And all opinion evidence should be received and carefully considered and scrutinized with great caution." In giving the instruction this clause was omitted. It would have been harmless if allowed, but its omission was equally harmless, since the part given covered the same proposition. The fourteenth instruction requested by defendant was refused outright. It was as follows: "The abstract opinion of any witness, medical or of any other profession, is not of any importance. It is a juror's duty to arrive at his conclusion upon his own judgment exercised in a reasonable way, after carefully weighing all of the evidence. No judicial tribunal would be justified in deciding for or against the legal responsibility of one charged with insanity upon the mere opinion of witnesses, however numerous or respectable." The refusal was proper upon the ground that

CLI Cal.—43

there is no such rule of law. The case cited as authority sustaining the instruction (*In re Redfield*, 116 Cal. 655, [48 Pac. 794]), is not in point. It is contended that the defendant was prejudiced by that part of the charge of the court where, in defining the character of insanity which the law regards as a valid defense in cases of homicide and other crimes of violence, it is pointed out that "irresistible impulse" to do an act known by the perpetrator to be wrong does not relieve him of its legal consequences. It is said that no such defense was made or attempted; that he had relied alone upon "settled insanity," and therefore that the injection of this "false issue" into the case was confusing, misleading, and prejudicial to the only defense which had been made either in the evidence or the argument. We do not think it an error for a court where the defense of insanity is interposed to a charge of murder to state the law of insanity fully and with all its special limitations and qualifications, and we cannot see how the defendant could have been prejudiced by what was said in regard to "irresistible impulse."

Misconduct of counsel for the prosecution is alleged, but the record does not sustain the allegation that the evidence was misstated by special counsel for the people, and if it had been, that was a matter for correction at the time by an appeal to the court and to the recollection of the jurors. As to the perfervid language of the district attorney in characterizing the atrocity of the crime, that was a matter of taste which we are not called upon to consider. When he went too far in the opinion of the trial judge, he was admonished and corrected by him.

The verdict of the jury was returned on the 21st of March, and the defendant arraigned for sentence on the 24th. Counsel says he requested further time to procure affidavits as to newly discovered evidence in support of that ground of his motion for a new trial, but it does not appear that he made any showing in support of this application, and we cannot see that the court abused its discretion in refusing to postpone the arraignment and in limiting counsel to one hour for the argument of the motion for a new trial.

We regret to be obliged to add that there are many passages in the brief of counsel for appellant reflecting upon the action of the trial judge which appear to be without the

slightest justification. To say that it was "a brutal abuse of discretion and an inhuman violation of his constitutional rights" to compel the defendant to go to trial in the face of the affidavit for continuance would have been grossly improper language to incorporate in a brief even if the facts had justified the charge. The offense is aggravated in this case by the absence of any foundation for the charge. Other less flagrant instances of abuse of the privilege of counsel need not be specified. We may hope that there will be no recurrence of similar offenses.

The judgment and order of the superior court are affirmed.

Henshaw, J., Angellotti, J., Shaw, J., McFarland, J., Lorigan, J., and Sloss, J., concurred.