[Crim. No. 3167.   Second Appellate District, Division One.—May 19, 1939.]

THE PEOPLE, Respondent, v. DOROTHY ALICE DONE-GAN, Appellant.

Morris Lavine for Appellant.

Earl Warren, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

WHITE, J.—In an information filed by the district attorney of Los Angeles County, the defendant was charged with murder, it being alleged that she unlawfully and with malice aforethought killed one William Walter Donegan, who was her divorced husband. Pleas of not guilty and not guilty by reason of insanity were interposed by defendant. She was subsequently placed upon trial and the jury returned a verdict finding the defendant guilty of murder in the second degree. Upon the issue raised by the plea of not guilty by reason of insanity, the same jury upon a further trial found that the defendant was sane at the time of the commission of the homicide.

The single ground upon which appellant urges a reversal is that the trial court erred in the giving of certain instructions to the jury on the law of insanity as applied to criminal cases where a defendant seeks to excuse an unlawful act upon the ground that at the time of its commission she was so deranged and diseased mentally that she was not conscious of the wrongful nature of the act committed.

Briefly, appellant contended on the issue of not guilty by reason of insanity that for some six years prior to the homicide she suffered from ''spells'' which produced a dazed condition when ''everything went black, I couldn't see, lost consciousness''; that these ''spells'' occurred from a month to three months apart. There was evidence given by eyewitnesses to these ''spells'' that when appellant was seized with one she would ''faint—appear unconscious—her body become rigid—she frothed at the mouth—her muscles would stiffen and her mouth would twitch''. Appellant herself testified that some three weeks before the murder she purchased a pistol because the deceased had threatened to kill her and she was afraid of him; that on the night of the shooting, June 30, 1938, about 9 o'clock P. M., she arrived at the home of her former husband, where her two children were then domiciled; that she had the gun in her purse. Appellant's testimony as to what happened just

preceding the killing and immediately thereafter is as follows:

"Q. Now, when you entered the living room did you see anyone in there in the living room? A. No. Q. And from the living room where, if any place, did you go? A. Into the kitchen. Q. All right. And did you see anyone in the kitchen? A. When I got into the kitchen my little boy jumped up and come running to me. Q. Where did he come from? A. From the bedroom. Q. From the bedroom? A. Yes. Q. And did you see Mr. Donegan there at that time? A. Yes. Q. Where was Mr. Donegan? A. He was in bed. Q. And what next did you do? A. When the little boy ran to me Mr. Donegan jumped out of bed. Q. What, if anything, did he do? A. He grabbed hold of me. Q. Now, at the time the little boy came running to you did you have a gun in your hand? A. No. Q. You say Mr. Donegan jumped out of bed and grabbed hold of you? A. Yes. Q. What, if anything, did he do to you? A. He grabbed hold of my throat. Q. What did he do when he grabbed hold of your throat? A. I don't remember exactly. I just remember there was a struggle. Q. There was a struggle? A. Yes. Q. Were you afraid that Mr. Donegan might harm you at that time? A. Yes. Q. When you saw him coming towards you were you afraid that he might even kill you? A. Yes. Q. *Do you remember anything that occurred after the struggle started between yourself and Mr. Donegan in the house there?* A. *No, I don't believe I do.* Q. What next do you remember? A. I remember my little boy was leading me by the hand outside.''

■ Appellant asserts that her defense was that while she was ordinarily sane, there were times when she was insane, and that when she killed her former husband she was in the throes of one of her "spells" and temporarily insane. This being so, prejudicial error is alleged on the part of the trial judge when he instructed the jury that the defense of "irresistible impulse" and "moral insanity", so-called, does not constitute a legal defense to crime. Appellant's contention that the giving of these instructions misled the jury to her prejudice cannot be upheld. ■ That it is not error for the trial court, where the defense of insanity is interposed to a charge of murder, to state the law of insanity fully and with all its special limitations and qualifications,

is firmly established. (*People* v. *Buck*, 151 Cal. 667, 674 [91 Pac. 529].) It requires no citation of authority for the statement that the law refuses to recognize as a defense the "irresistible, uncontrollable impulse" and "moral insanity" doctrines. (*People* v. *Sloper*, 198 Cal. 238, 248 [244 Pac. 362].) In the instant case, where there was testimony that the deceased had ravished appellant prior to his marriage with her; that he had abused, vilified and beaten her continually throughout her married life, the court was well within the law in admonishing the jury as to the type of insanity which constitutes a defense to crime and pointing out the various forms of mental infirmities which may not be availed of as a defense to a criminal charge.

We cannot see how appellant was prejudiced by the instructions complained of, especially when the court also fully, fairly and correctly instructed the jury with reference to appellant's defense that she was temporarily insane at the time of the killing. In advising the jury on this issue the trial court unequivocally stated that the law recognizes temporary insanity at the time of the commission of a homicide as a defense "just as much as permanent insanity if the temporary insanity meets the requirements of the law, that is, if the defendant at the time of the homicide was so mentally deranged from any cause as not to understand the nature and quality of her acts, or, if she did understand them, could not distinguish between right and wrong in reference to such acts and if you believe from the evidence by a preponderance thereof that the defendant, at the time she committed the homicide, was temporarily insane within the meaning of the law, then regardless of whether the defendant was sane before and after the time when the acts were committed, it is your duty to bring in a verdict that defendant was insane at the time of the commission of the offense".

We find no reversible error in the record. The trial judge accorded appellant a fair and impartial trial upon the issue raised by her plea of not guilty by reason of insanity.

The judgment appealed from is therefore affirmed.

York, P. J., and Doran, J., concurred.