# Ezell v. The State.

*Indictment for Murder.*

1. *Jury in capital case ; when person drawn as juror cannot be found, no ground for quashing venire.*—It is no ground for quashing the *venire*

[Ezell v. The State.]

in a capital case that some of the persons drawn as jurors could not be found, and the sheriff so returned their names.

2. *Evidence; broken gun admissible.*—On a trial for murder, where it is shown that deceased, when found, "had three severe wounds on her head produced by blows from a blunt instrument, either of which would have been sufficient to have caused death," and there is evidence tending to show that on the evening of the murder defendant and deceased were seen together quarreling, while going in the direction of where deceased was found, defendant having in his hand at the time, the gun which was found broken near the body of deceased next morning, the broken gun so found was admissible in evidence; and the fact that at the time it was offered in evidence it was worse broken than when first picked up is no cause for its exclusion—it having been identified as the gun found near the body of the deceased.

3. *Verdict of jury; amendment after its reception.*—A verdict, "We, the jury, find the defendant guilty of murder in the first degree, and fix the penalty death," is neither irregular nor defective, but complete, definite and legal, and the amendment of such a verdict, by inserting the word "at" between "penalty" and "death" neither adds to nor alters its legal effect; and the fact that, after the discharge of the jury and the removal of the defendant from the court room, the court directed the jury to take their seats and make such amendment of their verdict, furnishes no ground of complaint to the defendant.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOMAS M. ARRINGTON.

The appellant was indicted and tried for the murder of his wife, Hester Ezell, and was convicted of murder in the first degree, and sentenced to suffer death.

The testimony for the State tended to show that on the night the said Hester Ezell was murdered, she and her husband, the defendant, quarrelled; that after quarrelling with the deceased the defendant left her, and went to his house; that he soon returned with a gun in his hand, which was unloaded; that the defendant and the deceased again began quarrelling, and walked in the direction of what is known as the "old chimney," near the city of Montgomery; that the next morning the deceased was found, lying between the "old chimney" and the river; that she was not dead, but unconscious, and had three severe wounds on her head, produced by blows from a blunt instrument, any one of which was sufficient to produce death; that lying near her was the lock and broken stock of the gun, which the defendant had had the evening before, as they walked towards the "old chimney;" that the said Hester Ezell lived several

hours after she was found, but never regained conscious-ness before her death.

The defendant moved the court to quash the *venire*, on the ground that the court had erred in discarding the five names of the regular jurors, returned by the sheriff as not found, and drawing five other names in their stead. The court overruled this motion, and the defend-ant duly excepted.

Upon the examination of one of the witnesses the State offered in evidence the gun which was found near the deceased the morning she was discovered. The de-fendant objected to the gun · being introduced in evi-dence, and duly excepted to the court's overruling his objection. The facts pertaining to this ruling, and the other facts necessary to show the questions reviewed by the court on the present appeal, are sufficiently stated in the opinion.

HILL, ROQUEMORE & ROGERS, for appellant.—The defendant had a right to be present when the verdict was amended.— *Waller v. State*, 40 Ala. 326; *State v. Hughes*, 2 Ala. 102; *Marvin's Case*, 43 N. Y. 1; *Roberts v. State*, 111 Ind. 340; Abbott's Trial Evidence, p. 503, § 814.

WM. L. MARTIN, Attorney-General, for the State.

COLEMAN, J.—This is the second appeal in this case.—102 Ala. 101. On this trial the appellant was convicted of murder in the first degree, and sentenced to suffer death. April the 9th, 1894, was set for the trial of the case, and the sheriff was ordered to summon one hundred persons, including those summoned for the week beginning April 9th, 1894, to serve as jurors in the trial of this case. Of the thirty-six persons drawn as regular jurors for the week beginning April 9th, 1894, thirty-one were summoned, and as to five, the sheriff's return showed they were "not found." To complete the number ordered by the court to be sum-moned as a special *venire*, there were drawn from the jury box sixty-nine names, which, added to the regular jurors summoned for the week, completed the number to one hundred. This proceeding strictly conformed to the order of the court and complied with the statute.

[Ezell v. The State.]

Of the one hundred names drawn as a special jury fourteen were "not found." The fact that a juror whose name has been drawn cannot be found, is no ground for quashing a *venire*. It is unnecessary to cite authorities to this proposition. *Prima facie*, at least, the return spoke the truth.

The evidence showed that deceased "had three severe wounds on her head produced by blows from a blunt instrument, either of which would have been sufficient to have caused death." There was no error in admitting in evidence the broken gun found lying near the person or body of the deceased. There was evidence tending to show that defendant and deceased were seen together going in the direction of where deceased was found, and defendant and deceased were quarrelling, that defendant "had in his hand at the time the gun found near the body." The fact that in some way the gun had been further broken between the time when first picked up and when offered in evidence on the last trial, was no sufficient cause for excluding it altogether. The gun was identified as the one found near the body. It's condition when first found was fully proven, and there was evidence tending to identify it as the gun in the possession of the defendant, when last seen in company with deceased.

The jury returned their verdict in the following form : "We, the jury, find the defendant guilty of murder in the first degree, and fix the penalty death." After this verdict was received, and the jury discharged, and defendant had been removed from the court room, upon motion of the solicitor, the court directed the jury to take their seats in the jury box, and they were permitted to insert in the verdict the word "at" between the words "penalty" and "death," so that the verdict would read, "and fix the penalty at death." The verdict, as first delivered by the jury and received by the court, was neither irregular nor defective. It was complete, definite and legal. There was no room to doubt the meaning and intention of the jury. The verdict declared the defendant to be guilty of "murder in the first degree and fixed the penalty death." Inserting the word "at" between the words "penalty" and "death" did not add to or alter its legal effect. If the verdict had been irregular or legally defective, it may be that, after it was re-

ceived, and the jury discharged, and the defendant removed from the court room, such irregularity or defect, under the evidence, could not have been remedied by an amendment. Such is not the case here.

We find no error in the record. It appearing that the day fixed by the trial court for the execution of the sentence has passed, it is ordered that Friday, July 20th, 1894, be and is hereby appointed as the day for the execution of the sentence, as adjudged by the trial court.

Affirmed.