[Crim. No. 1423. In Bank.—October 9, 1908.]

## THE PEOPLE, Respondent, v. ANTON BESOLD, Appellant.

CRIMINAL LAW—NO APPEAL LIES FROM ORDER REFUSING TO POSTPONE TRIAL.—No appeal lies by a defendant in a criminal prosecution from an order denying his motion for a postponement of the trial. Such order is reviewable on appeal from the judgment, but to be reviewed it is necessary to incorporate the motion, evidence, and ruling in a bill of exceptions.

ID.—MURDER—PROOF OF CORPUS DELICTI—CONFESSION OF DEFENDANT.— On a trial for murder, the prosecution must offer evidence tending to prove the *corpus delicti*, and the want of such evidence cannot be supplied by proof of extra-judicial confessions or admissions of the defendant. In the present case, the evidence is held sufficient to fully establish the *corpus delicti*, without considering any statement of the defendant.

ID.—ORDER OF PROOF.—While it is ordinarily the proper practice to show the *corpus delicti*, before introducing evidence of any statement of the defendant, a mere variation in the order of proof would not be prejudicial to the defendant.

ID.—GARMENTS ON BODY OF DECEASED—CHANGE IN CONDITION—SKULL— EVIDENCE.—The garments found on the body of the person killed, although not in the same condition as when taken from the body, are admissible in evidence, when such changes as may have taken place are fully explained. The same rule applies to the admission in evidence of the skull of the deceased.

ID.—INSTRUCTIONS AS TO INTENTION—ASSAULT WITH DEADLY WEAPON. —In a prosecution for murder, in which the evidence tended to show that the deceased was killed through the instrumentality of a pistol fired by the defendant, it is proper to instruct the jury as follows: "A person must be presumed to intend to do that which he voluntarily and willfully does in fact do, and must also be presumed to intend all the natural, probable and usual consequences of his own acts. Therefore, when one person assails another violently with a dangerous weapon, likely to kill, and which does in fact destroy the life of the party assailed, the natural presumption is that such assailant intended death, or other great bodily harm, and in the absence of evidence to the contrary, the presumption must prevail. The willful use of a deadly weapon without excuse or provocation, in such a manner as to imperil life, generally indicates a felonious intent."

ID.—MOTIVE NOT INDISPENSABLE TO CONVICTION—INSTRUCTIONS.—In such a prosecution, it is not error to instruct the jury that "proof of motive is not indispensable to a conviction."

ID.—MURDER IN FIRST DEGREE—CONVICTION OF SECOND DEGREE—IN-
STRUCTIONS.—An erroneous instruction as to the definition of murder
of the first degree is without prejudice when the defendant was
convicted of murder of the second degree.

ID.—CONSTRUCTION OF INSTRUCTIONS.—In determining whether or not
the law was properly declared for the guidance of the jury, the
court should look, not to one isolated excerpt from the instructions,
but to the charge as a whole.

ID.—INSTRUCTION ASSUMING FACT OF KILLING.—In a prosecution for
murder, where the charge to the jury, taken as a whole, repeatedly
and correctly instructed them as to every element of the crime neces-
sary to be proved beyond a reasonable doubt in order to warrant the
conviction of the defendant, an isolated instruction that "in deter-
mining the intention of the defendant at the time of the transaction
complained of, it is important to consider the means used to accom-
plish the killing," and "the intent or intention is manifested by the
circumstances connected with the offense, and the sound mind and
discretion of the accused," cannot be construed as containing an
intimation that if there had been a killing, it had been done by the
defendant.

APPEAL from a judgment of the Superior Court of Los
Angeles County from an order refusing a new trial, and from
an order refusing a continuance. B. N. Smith, Judge.

The facts are stated in the opinion of the court.

A. A. Sturges, for Appellant.

U. S. Webb, Attorney-General, George Beebe, Deputy
Attorney-General, and J. Charles Jones, Deputy Attorney-
General, for Respondent.

SLOSS, J.—The defendant, charged with the murder of
Cladie Besold, was found guilty of murder of the second
degree. His motion for a new trial was denied and judgment
of imprisonment for life followed. He appeals from the judg-
ment and from the order denying his motion for a new trial.

He also seeks to appeal from an order denying his motion
for a postponement of the trial. The code does not authorize
an appeal from this order. An order denying a motion for
a continuance is reviewable on appeal from the judgment, but
to obtain a review of such order it is necessary to incorporate
the motion, evidence, and ruling in a bill of exceptions. (Pen.
Code, secs. 1173, subd. 2, 1174; *People* v. *Buck*, 151 Cal. 667,

[91 Pac. 529].)    The record before us does not include any such bill, and therefore presents no basis for reviewing the action of the trial court in refusing to postpone the trial.

The following statement of the evidence produced at the trial, while not exhaustive, will suffice to illustrate the points raised by the appellant.    Some time in August, 1906, one Horton, while walking up Temescal Cañon, near Santa Monica beach, in Los Angeles County, saw a small piece of red silk lying in the path.    On looking into the neighboring bushes he found the corpse of a woman lying some five or six feet from the path.    The body was removed to Santa Monica, where an inquest was held.    It was evident that death had preceded the discovery of the body by a number of days.    The flesh on the head and hands had decayed or dried and the body was badly decomposed.    In the skull were two holes, one on the left side and the other on the right, each being a little above and forward of the ear.    They were holes which might have been caused by the entrance and exit of a bullet, and in fact a 38-caliber bullet, fitting the smaller hole, was found in the skull.    It had apparently fallen back after piercing the skull and entering the scalp, its force being then spent.    A wound of the character indicated by the condition of the remains would cause immediate death.    A careful search of the place where the body was discovered disclosed no firearm or other weapon.    By means of the clothing found upon the body, and evidence of disease in some of the bones, the body was identified as that of Mrs. Cladie Besold, the wife of the defendant.

Dr. N. J. Brown, a physician of Los Angeles, testified that he had attended her professionally on July 9, 1906.    He never saw her after that time.    Mrs. Besold had an appointment with Dr. Brown for the eleventh day of July, 1906, at 10 o'clock in the morning.    She did not appear, but at about one o'clock in the afternoon of that day the defendant came to Dr. Brown's office, in a condition of apparent excitement, and told the doctor that Mrs. Besold could not come that day for treatment, and that she had left Los Angeles for San Francisco, intending to stop at Summerland, near Santa Barbara, on the way.

On the evening of July 11th, the defendant came to D. R. Cameron's store in Los Angeles to open a box, which he had

left there. He brought a trunk containing· clothing which he said belonged to his wife, and stated to Cameron that his wife had gone to "Summerville, or Riverside, or somewhere." On the 13th he told Cameron that he had telegraphed to his wife, and was going to start to join her the next day. On the 19th or 20th of August, he returned, and told Cameron that his wife was in West Virginia, and was getting along very nicely.

Mrs. Nobman was a friend of the Besolds and lived in San Francisco. On July 23d she received from the defendant a letter, in which, under date of July 20th, he said: "I know you was waiting for a letter from Cladie. It is only bad news I can write you. You know she was very sick, and when we got down to Los Angeles, she got worse all the time until July 11th, and I said it was her last, called the doctor to the house, but it was too late, and she was buried last Friday at St. Bernardino." On August 7th Besold visited Mrs. Nobman, and spoke of his wife's death, saying that she had hastened her end by drinking to excess.

Mrs. Ethelin Chaffin had charge of a rooming-house in which Besold and his wife lodged in June and July, 1906. On the 11th of July, 1906, as the defendant and Cladie Besold were leaving the house, the latter said to Mrs. Chaffin, in the hearing of Besold, that they were going to the beach for the day. Mrs. Chaffin never saw Cladie Besold again. The defendant returned the same evening, between five and six o'clock, and said he expected a telegram from his wife; that she had gone to Summerland.

Besold was arrested in Washington, D. C., on the twenty-first day of September, 1906. In his possession were various articles of jewelry which had belonged to Cladie Besold. He told the arresting officer that his name was Anton Oerter. Subsequently he said that his wife had gone to New Mexico; that she had left him, and he didn't know what had become of her.

W. A. White, the sheriff of Los Angeles County, and one of his deputies, went to Washington to bring Besold back for trial. On the return journey they questioned the accused, and he stated that his wife had left him and had gone to Summerland, and that he didn't know what had become of her. He said he had never had a gun, that the gun belonged to his wife. The deputy sheriff asked him, "Why did you take your wife·

up in that lonely cañon and kill her?" to which he replied,
"Sheriff, if you have any heart, don't ask me, she makes me
trouble when she is alive and now she makes me trouble when
she is dead."

It appeared that on August 26, 1906, the defendant was
married by a justice of the peace to a Mrs. Pickett.

This recital of the testimony is a complete answer to the
claim that the evidence failed to show that the defendant com-
mitted the crime of which he was convicted. The finding of
the dead body of Cladie Besold, with a bullet hole through the
skull, together with the testimony of experts that a bullet
piercing the head of a person in the manner indicated by the
condition of the remains would cause death, was certainly per-
suasive evidence that Mrs. Besold's death had been caused by
a gunshot wound. The fact that no pistol or other firearm
was discovered in the neighborhood of the corpse clearly
tended to show that the wound had not been self-inflicted.
Nor was there any lack of testimony tending to prove that
the injury resulting in death had been inflicted by the defend-
ant. He had been seen with the deceased on the morning of
July 11th. At that time she had declared in his presence that
she was going with him to the beach. She was never again
seen alive, but her dead body was found near the beach.
Within a couple of days of the 9th of July, we find the defend-
ant stating to various persons that she had gone to Summer-
land. A little later he declares that she had died and been
cremated. With her clothing and jewelry in his possession,
he departs from the state and, on being arrested, states that
she is alive and had left him. In the meanwhile, he has con-
tracted another marriage. His statements regarding his wife
are confused and contradictory, and all are contrary to the
established facts. Furthermore, some of his statements to the
officers who were bringing him back from Washington were
almost tantamount to a confession. All of these circumstances
combined to make out a case which the jury was justified in
finding to be inconsistent with any rational hypothesis other
than that of defendant's guilt.

What has been said covers the point that the court erred in
admitting evidence of incriminatory statements of the defend-
ant, because, as is claimed, the *corpus delicti* had not been
established. Before any of the rulings complained of had been

made, the people had proved the finding of the dead body of Cladie Besold, in a condition and under circumstances which warranted, if they did not compel, the inference that her death had been caused by the violent act of some person other than herself. Undoubtedly the prosecution is bound to offer evidence which tends to show the commission of a crime, and the want of such evidence cannot be supplied by proof of extra-judicial confessions or admissions of the defendant. (*People* v. *Simonsen,* 107 Cal. 345, [40 Pac. 440] ; *People* v. *Ward,* 145 Cal. 736, [79 Pac. 448].) But here, without considering any statement of the defendant, the evidence referred to fully established the *corpus delicti,* that is, it tended to show that the person alleged to have been murdered had come to her death, and that her death had been caused by criminal agency. As we have observed, this necessary proof was made before the admission of evidence of any statement of the defendant. Such is ordinarily the proper practice. We are, however, not to be understood as holding that a mere variation in the order of proof would be prejudicial to the defendant. (*People* v. *Jones,* 123 Cal. 65, [55 Pac. 698] ; *People* v. *Fallon,* 149 Cal. 287, [86 Pac. 689].)

There was no error in admitting in evidence, over the objection of the defendant, the garments found on the person of the deceased. It is said that these articles were not shown to be in the same condition in which they had been when taken from the body. Such changes as may have taken place were fully explained. With this evidence of the nature and extent of the alterations, the jury could determine the condition of the clothing at the time the body was found. The ruling attacked was correct. (*Ezell* v. *State,* 103 Ala. 8, [15 South. 818] ; *Wynne* v. *State,* 56 Ga. 113; *Boucher* v. *Robeson Mills,* 182 Mass. 500, [56 N. E. 819] ; *Levy* v. *State,* 28 Tex. App. 203, [19 Am. St. Rep. 826, 12 S. W. 596].) The same considerations apply to the admission in evidence of the skull of the deceased.

Among the instructions to the jury was the following: "A person must be presumed to intend to do that which he voluntarily and willfully does in fact do, and must also be presumed to intend all the natural, probable and usual consequences of his own acts. Therefore, when one person assails another violently with a dangerous weapon, likely to kill, and which

does in fact destroy the life of the party assailed, the natural presumption is that such assailant intended death, or other great bodily harm, and in the absence of evidence to the contrary, this presumption must prevail. The willful use of a deadly weapon without excuse or provocation, in such a manner as to imperil life, generally indicates a felonious intent."

We perceive no sound basis for objecting to this instruction. It correctly states the law. (*People* v. *Newcomer*, 118 Cal. 263, [50 Pac. 405].) Nor can it be justly said to have no application to the case at bar. If the jury believed that the defendant had assailed Cladie Besold with a dangerous weapon, and that she had died in consequence of his act, the intent with which he acted became a material matter for their consideration.

There was no error in charging the jury that "Proof of motive is not indispensable to a conviction." (*People* v. *Durrant*, 116 Cal. 179, 208, [48 Pac. 75].) *People* v. *Glaze*, 139 Cal. 154, [72 Pac. 965], relied on by appellant, merely holds that the court did not err in refusing to charge that "absence of motive is in favor of the defendant." This was held to be an instruction on a matter of fact and properly refused on that ground. The same cannot be said of the instruction given here.

A part of the definition of murder of the first degree is criticised. If the language used by the court was erroneous, the defendant was not harmed thereby, since he was convicted of murder of the second degree only. (*People* v. *Ryan*, 152 Cal. 364, [92 Pac. 853]; *People* v. *Green*, 1 Cal. App. 432, [82 Pac. 544].)

The court instructed the jury that "In determining the intention of the defendant at the time of the transaction complained of, it is important to consider the means used to accomplish the killing. The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused."

It is argued that this instruction assumed as a fact that the defendant had in fact done the killing. We think the language is not fairly open to this construction. The court was dealing solely with the question of intent as one of the elements affecting responsibility for a homicide, and was declaring the rule which should govern the jury in determining

such intent. Other factors going to make up the crime charged were not under consideration at the moment. It is impossible to declare, in each instruction, the law governing every phase of the entire case. But even if we assume that the charge quoted, taken by itself, involved an assumption that there had been a killing, and that it had been done by the defendant, it will readily be seen, on an examination of other instructions given, that no such intimation was intended by the court, and that the instruction could not have been so understood by the jury. To determine whether or not the law was properly declared for the guidance of the jury, we are to look, not to an isolated excerpt from the instructions, but to the charge as a whole. (*People* v. *Flynn,* 73 Cal. 514, [15 Pac. 102]; *People* v. *Tomlinson,* 66 Cal. 346, [5 Pac. 509]; *People* v. *Fehrenbach,* 102 Cal. 401, [36 Pac. 678]; *People* v. *Brittain,* 118 Cal. 411, [50 Pac. 664]; *People* v. *Ah Jake,* 91 Cal. 99, [27 Pac. 595]; *People* v. *Anderson,* 105 Cal. 34, [38 Pac. 513]; *People* v. *Winters,* 93 Cal. 281, [28 Pac. 946]; *People* v. *Leonard,* 106 Cal. 302, [39 Pac. 619]; *People* v. *Weber,* 149 Cal. 345, [86 Pac. 671].)

In this case the court impressed upon the jury, by instructions repeated in various forms, the propositions that, in order to justify a conviction, the prosecution must establish, beyond a reasonable doubt, every element of the alleged crime and that the defendant was entitled to an acquittal unless his guilt of a crime embraced in the charge, and of every essential element thereof, was established beyond a reasonable doubt. Indeed, the instructions covering these phases of the case were so full and numerous that we cannot undertake to quote all of them at length here. One or two extracts will suffice. Thus, among other instructions the jury was told that "although the proof . . . may show certain circumstances beyond a reasonable doubt, yet if, in your opinion, it fails to show any one essential or material element or circumstance of the guilt of the accused beyond a reasonable doubt, then it is your duty to acquit the defendant; every essential and material link in the chain of evidence, fastening upon the defendant the guilt of the offense charged in the information, must be proved to your satisfaction beyond a reasonable doubt, and if, in your opinion, such proof has not been made, you must acquit the defendant." Again, "you are instructed that where independ-

ent facts and circumstances are relied upon to identify this
defendant as the person who committed the crime with which
he stands charged, each and every material fact or circum-
stance which is necessary to complete the chain or series of
independent facts tending to establish a presumption of guilt
must be established to the same degree of certainty as the main
fact." In addition the jury was instructed specifically that to
warrant a conviction it must be proved beyond a reasonable
doubt, by evidence exclusive of defendant's statements or ad-
missions, that Cladie Besold had been killed, and that she had
come to her death by criminal means. This was, in effect,
stated at least three times. That the prosecution was required
to prove, beyond a reasonable doubt, every element of the
crime charged, was declared no less than five times. Instruc-
tions requiring the jury to acquit upon failure of the prose-
cution to prove, beyond a reasonable doubt, a single necessary
element of the crime, appear in two parts of the charge. The
presumption of innocence, as applying to every ingredient of
the crime, was fully set forth, as was the right of the defend-
ant to have the evidence construed in his favor, so far as rea-
sonably could be done. Two instructions informed the jury
that, where circumstantial evidence is relied on, it must be
such as to exclude, to a moral certainty and beyond a reason-
able doubt, every reasonable hypothesis but that of the guilt
of the defendant. The doctrine of reasonable doubt, and the
exclusive right of the jury to determine all questions of cred-
ibility of witnesses were clearly and amply explained. And,
finally, the jury was instructed that before it could find the
defendant guilty, it must "be satisfied and entertain an abid-
ing conviction to a moral certainty, that the defendant Besold
killed the deceased."

In view of all this, it is impossible to believe that the jury
could have understood the instruction complained of as con-
veying any intimation that the court believed that the defend-
ant had in fact killed the deceased. The instruction, taken
together with those referred to, meant no more than that, if
the jurors should be satisfied beyond a reasonable doubt, that
the defendant had killed Cladie Besold, they were, in deter-
mining the intent with which he had done the act, to consider
the means used and other facts shown. As has been suggested,
the court was here dealing with the question of intent as

affecting the distinction between murder and manslaughter. No juror of ordinary intelligence could have taken this language as meaning that he was not, before voting for a conviction, bound to be satisfied beyond a reasonable doubt that the defendant had killed the deceased. That he was so bound had been stated and restated with perhaps unnecessary elaboration. In any view that may be taken of the instruction it must, in order to have any reasonable meaning, be read in the light of the other instructions as hereinbefore indicated.

No other points are argued by the appellant. We find in the record no error affecting him in any substantial right.

The appeal from the order denying a continuance is dismissed. The judgment and the order denying a new trial are affirmed.

Shaw, J., Angellotti, J., Lorigan, J., Henshaw, J., and Beatty, C. J., concurred.