THE PEOPLE OF PUERTO RICO, Petitioner, *v.* DISTRICT COURT OF PUERTO RICO, PONCE SECTION, Respondent. CARLOS E. COLÓN, Intervener.

No. 1944. Argued November 12, 1952.—Decided May 5, 1953.

*José Trías Monge, Secretary of Justice (Víctor Gutiérrez Fran-
qui, Former Attorney General and Frank Vizcarrondo Vivas,
Former Assistant Fiscal of the Supreme Court on the peti-
tion and on the brief) and J. Rivera Barreras, Fiscal of the
Supreme Court and R. Ydrach Yordán, Assistant Fiscal,* for
petitioner. *Rafael Rivera Zayas, Inés Acevedo de Campos,
Lorenzo Lagarde Garcés, Rafael Hernández Matos and Car-
los Todd,* for intervener, defendant in the main action.

MR. JUSTICE SIFRE delivered the opinion of the Court.

On August 18, 1951, at daybreak, on Méndez Vigo Street, in the city of Ponce, the intervener, Carlos E. Colón, fired a revolver wounding Joseph Frederick Owens. On that date, Arturo Cintrón García, the Prosecuting Attorney, started the investigation of the case interrogating several witnesses. Others were interrogated on the 25th of that month. The injured party was not interrogated on either occasion.

On October 16 of that same year, Prosecuting Attorney William Morales Torres filed an information against the intervener in the former Municipal Court of Puerto Rico, First Division of Ponce, for the crime of aggravated assault and battery. The charge was that:

".... unlawfully, willfully and maliciously and with the criminal intent of inflicting serious bodily harm to a human being, he committed assault and battery on the person of Joseph Frederick Owens with a firearm, firing a shot at him and wounding him on the lower region of the stomach.

"The aggravating circumstance in this case consists in that the wound inflicted is of a serious nature and was caused by a firearm, which is a deadly weapon."

On even date Owens moved to dismiss said information, pursuant to the provisions of § 446 of the Code of Criminal Procedure, stating that he had come to a settlement with the

defendant and had been compensated by the latter for "all his injuries upon the payment of a sufficient valuable consideration . . ." On that same day, and after examining the aforesaid information, the statements given at the preliminary examination held by the Prosecuting Attorney, Arturo Cintrón García, as well as a statement of Joseph Frederick Owens subscribed before the Prosecuting Attorney, William Morales Torres, on October 15, 1951, and a motion to dismiss, the Court entered the following order and decree:

"The Court after having examined the record in the instant case, the verified motion of the injured party to dismiss on the ground that there had been a settlement, as well as the acquiescence of the District Attorney of Ponce who conducted the preliminary examination and verified the information, the sworn statements of the injured party stating that he has been totally indemnified for whatever loss and damages he may have suffered, which also brings to the Court's attention certain circumstances, and making use of its discretionary powers, concludes that the accused did not commit the crime, with which he is being charged, with a felonious intent and that in accordance with the provisions of §§ 445, 446 and 447 of the Code of Criminal Procedure in force, the motion of the injured party is hereby granted in view of the settlement between the parties and orders the dismissal of this case acquitting the defendant, as it hereby acquits him of any guilt in this case, upon the payment of the costs, if any, and finally orders the cancellation of any provisional bond he may have given." [1]

---

[1] Sections 445, 446 and 447 of the Code of Criminal Procedure, 1935 ed., read as follows:

"Section 445.—When a defendant is held to answer on a charge of misdemeanor, for which the person injured by the act constituting the offense has a remedy by civil action, the offense may be compromised as provided in the next section, except when it is committed:

"1. By or upon an officer of justice, while in the execution of the duties of his office;

"2. Riotously;

"3. With an intent to commit a felony.

"Section 446.—If the party injured appears before the court to which the depositions are required to be returned, at any time before trial, and acknowledges that he has received satisfaction for the injury, the court may, in its discretion, on payment of the costs incurred order all proceedings to be stayed upon the prosecution, and the defendant to be discharged

After the case for aggravated assault and battery had been dismissed, the Special Prosecuting Attorney at Large, Guillermo A. Gil, filed an information against the intervener in the former District Court of Puerto Rico, Ponce Section. The second count of the information charges the intervener with the crime of assault to commit murder, committed in the following manner:

"The aforesaid defendant, Carlos E. Colón, prior to the filing of this information, that is, on or about August 18, 1951, on Méndez Vigo Street, Ponce, Puerto Rico, which is included within the Judicial District of Puerto Rico, Ponce Section, Puerto Rico, then and there, showing an abandoned and malignant heart, with malice aforethought and deliberate intent to kill, assaulted Joseph Frederick Owens, a human being, with a revolver, shooting and seriously wounding him, with the intention, then and there, of committing murder in the person of the aforesaid Joseph Frederick Owens."

At the arraignment the intervener pleaded former jeopardy and res judicata, and prayed for the dismissal of the second count of the information on said grounds.[2]

In brief, he claimed that since he had been acquitted in the prosecution for aggravated assault and battery, the People was estopped from filing an information for the crime of assault to commit murder, inasmuch as said information was based on the same facts that had given rise to said prosecution, in which said facts had been "definitively adjudicated." The prosecution objected to said pleas and contended

therefrom; but in such case the reasons for the order must be set forth therein, and entered on the minutes. The order is a bar to another prosecution for the same offense.

"Section 447.—No public offense can be compromised, nor can any proceeding or prosecution for the punishment thereof upon a compromise, be stayed except as provided in this chapter."

[2] The intervener based the plea of former jeopardy and the allegation that the People was estopped from prosecuting him for the crime of attempt to kill, on the Fifth Amendment of the Constitution of the United States, on the third paragraph of § 2 of the former Organic Act of Puerto Rico, and on §§ 6, 162 and 446 of the Code of Criminal Procedure. The Fifth Amendment provides that no person shall be subject for the same offense to be twice put in jeopardy of life or limb. The third paragraph

that they did not lie since the defendant had not been "in jeopardy" before the Municipal Court for the same offense, and also because the order decreeing the dismissal of the information for aggravated assault and battery was null and void since the court lacked jurisdiction inasmuch as the crime committed by the intervener was an assault to commit murder, a felony, and as such, not subject to settlement in accordance with the provisions of § 445 of the Code of Criminal Procedure. These contentions were overruled by the Court *a quo* and the order appealed from was entered, directing the dismissal of the second count of the information. Feeling aggrieved by said order, the petitioner filed this petition for review. We granted the writ of certiorari.

The petitioner challenges said order claiming that the court erred (1) "in concluding that in the case at bar, the prohibition established by § 446 of the Code of Criminal Procedure constitutes 'statutory jeopardy' which bars the prosecution from filing a new information for the offense of assault to commit murder," (2) "in concluding that, inasmuch as the People was represented by its Prosecuting Attorney at the hearing on the motion for a settlement which gave rise to the dismissal of the information for aggravated assault and battery, the District Court should not look into the circumstances that gave rise to said dismissal in order to determine whether the Municipal Court had properly used

---

of § 2 of the former Organic Act provided that "no person for the same offense shall be put twice in jeopardy of punishment." Sections 6 and 162 of the Code of Criminal Procedure, 1935 ed., provide as follows:

"Section 6.—No person can be subjected to a second prosecution for a public offense for which he has once been prosecuted and convicted or acquitted."

"Section 162.—There are four kinds of pleas to an information. A plea of—

"1. Guilty;

"2. Not guilty;

"3. A former judgment of conviction or acquittal of the offense charged, which may be pleaded either with or without the plea of not guilty.

"4. Once in jeopardy."

"Section 446." See footnote 1 of this opinion.

its discretion in granting the motion for settlement filed by the aggrieved party."

Before discussing the errors assigned by the petitioner we must first decide certain issues raised by the intervener.

■ He alleges that this Court lacked jurisdiction to grant a writ of certiorari, since the petition or application is not verified. We disagree. The lack of verification being a formal defect it does not affect our jurisdiction. The defect was cured by the return filed in this Court. *Fernández* v. *District Court*, 71 P.R.R. 149.

■ He argues that the original petition "does not state facts constituting a cause of action," since it does not appear either from said petition or from the record that the petitioner moved for a reconsideration of the order. Again we disagree with the intervener. We may grant certiorari even if reconsideration of the order or judgment sought to be reviewed has not been prayed for, where the trial court at any time has had an opportunity to consider and decide the questions raised in the petition before us. *Water Resources Authority* v. *District Court*, 65 P.R.R. 880. The lower court had such an opportunity.

■ He also contends that § 348 of the Code of Criminal Procedure [3] enumerates the cases when the People of Puerto Rico may appeal from "a judgment of acquittal rendered by a lower court, and that the case at bar is not covered by any of its subdivisions," and that an order like the one at bar not being reviewable by an appeal, neither can it be

---

[3] Section 348 of the Code of Criminal Procedure, 1935 ed., reads as follows:

"Section 348.—An appeal may be taken by The People:

"1. From an order setting aside the information;

"2. From a judgment for the defendant on a demurrer to the information;

"3. From an order granting a new trial;

"4. From an order arresting judgment;

"5. From an order. made after judgment, affecting the substantial rights of the people;

"6. From an order of the court directing the jury to find for the defendant."

reviewed by certiorari, and it must be presumed that the legislative intent was not to authorize review by way of certiorari. He adds that it should be noted that the sub-divisions of that Section authorize appeals from orders favor-ing the defendant, entered prior to the defendant's having been put in jeopardy in the court *a quo*, without including any case in which the defendant "has been necessarily put in jeopardy before the lower court," as, according to the in-tervener, is the case at bar. He also argues that if the State could appeal or obtain a review of orders of acquittal when the defendant has been put in jeopardy, the appeal or review would be tantamount to a double jeopardy, in viola-tion of his constitutional rights.

It is a general rule in most jurisdictions that, in the absence of an Act expressly granting it the right to appeal, the State cannot obtain review of an order entered in a criminal prosecution. This doctrine is the basis for the in-tervener's contention that we may not review, by certiorari, at the instance of the People, an unappealable order.

Considering the provisions of § 670 of the Code of Civil Procedure,[4] defining and authorizing the writ of certiorari and in view of its scope and broad sphere of action recognized by our decisions, we shall not adopt the doctrine invoked by the intervener. To hold otherwise would amount to an unwarranted limitation and restriction of the function and use of that relief, and to a waiver of power which, in the exercise of our discretion,[5] we have always had to review

---

[4] Section 670 of the Code of Civil Procedure, 1933 ed., defines certiorari as follows:

"A writ issued by a superior to an inferior court requiring the latter to send to former a certified copy of some proceeding therein pending, or the record and proceedings in some cause already terminated in cases where procedure is not according to the course of the law, and to complete the proceedings when the lower court refuses to do so upon erroneous grounds."

[5] We had that power prior to the approval of the "Judiciary Act of the Commonwealth of Puerto Rico," approved July 24, 1952, whose § 14 prescribes that "Any judgment or ruling of the Superior Court may be reviewed by certiorari in the discretion of the Supreme Court." For that reason we need not discuss the scope of such precepts.

orders and decrees entered in criminal cases, either at the request of the defendant or at the instance of the People, where, as a general rule, no appeal can be taken therefrom, and in our judgment the circumstances so warrant.[5a]

Although in *People* v. *District Court*, 40 P.R.R. 826, we refused to issue the writ of certiorari prayed for by the People of Puerto Rico because, among other reasons, the action sought to be reviewed was in effect an acquittal, it being impossible to prosecute the defendants at another trial for the same offense which had given rise to the prosecution in which the action involved in the petition originated, we stated that "While this application is made in a criminal case the general principles of certiorari are applicable to it." In *People* v. *District Court*, 44 P.R.R. 681, the People filed a petition for certiorari to review an incident that had originated in a criminal case. The writ was issued and later discharged for reasons we need not discuss. Nevertheless, we stated in our opinion: "However, since the question of form is interlaced with that of substance, this Court might —*especially in view of the fact that the remedy by appeal is not available*—not only direct the court to enter a specific finding, but also to do so in accordance with the principles laid down in this opinion, reserving, of course, to the defendant all the defenses to which he might be entitled." (Italics ours.) In *People* v. *District Court*, 60 P.R.R. 217, we set aside in a certiorari proceeding instituted by the People of Puerto Rico, orders entered for the defendant in a criminal case.[6]

---

[5a] Section 671 of the Code of Civil Procedure provides that a writ of certiorari may be issued regardless of whether the order or judgment in question is reviewable by appeal.

[6] From our opinion in *People* v. *District Court*, 60 P.R.R. 217, we copy the following:

"The writ of certiorari, being an extraordinary remedy, should not generally be issued where there is available an adequate, speedy, and effective remedy in the ordinary course of law. As the order involved herein is appealable (§ 348 of the Code of Criminal Procedure, and *People* v. *Fajardo*, 21 P.R.R. 429), and as an appeal would constitute as speedy

There are precedents from other jurisdictions to support the rule that we may review by certiorari, at the request of the People, even where the right to appeal from the order involved in the petition had not been granted to the People (which rule, as already noted, has been applied and followed by this Court in the past). *State* v. *Coleman*, 190 A. 791 (R. I.) ; *State* v. *Fleckinger*, 93 So. 115 (La.) ; *State* v. *Dobson*, 36 S. W. 238 (Mo.) ; *State* v. *Then*, 177 A. 87 (N.J.). We consider that there is no reason for rejecting the rule. It has been our policy to use our power for the protection of all parties. It would be highly unfair to deny it to the State when, in order to comply with its duty to enforce penal laws, it demands said protection which can only be obtained by way of certiorari, and this remedy may be granted to afford such a protection, without impairing or destroying substantial rights of the defendant, which rights necessarily prevail over the relief sought by the People to review incidents or actions originating in prosecutions of a criminal nature.

We must decide now whether in the instant case the protection and relief sought by petitioner should be granted. We shall now turn to that question; and upon considering this aspect of the case, which involves a discussion of the errors assigned, we shall refer to the intervener's contention that review of the order appealed from does not issue because it would violate his constitutional right not to be put twice in jeopardy for the same offense.

The grounds on which the court *a quo* based its dismissal of the second count of the information for the offense of as-

and effective a remedy for the purpose of the case herein as a certiorari proceeding, we would be justified in discharging the writ issued on that ground alone. However, taking into account the fact that there is involved a question of practice, which is raised for the first time in this jurisdiction and which should be disposed of as soon as possible so that our decision might serve as a guide in future cases, we feel ourselves warranted in rendering now the proper decision instead of postponing it until the case were to come back to this court on appeal."

sault to commit murder, are contained in the following paragraphs of the order appealed from:

"We do not think it is our duty to invade the sphere of judicial discretion and decide whether or not the judge exercised his discretion properly. The State was represented in that prosecution. Through its legal representative, it characterized the offense and chose the jurisdiction to hear the case. The facts therein were decided with the State's consent. It has not been proved that the State, in thus acting through its legal representative, was moved by fraud, connivance or collusion. The sovereign cannot complain now, after that transaction has been closed, of having erroneously chosen the procedure it should have followed (7 Cal. Jur. 960). Especially when the transaction was not left to the sole will of the aggrieved party, but the People was also heard and participated in it, giving its consent.

"We have stated that the transaction carried out was predicated on the provisions of § 445 of the Code of Criminal Procedure."

After copying § 446, emphasizing the provision that an order entered pursuant to its provisions, discharging the defendant, "is a bar to another prosecution for the same offense," it further states:

"After construing this Section, we must necessarily conclude that it establishes a 'statutory jeopardy' which bars another prosecution against the defendant for the same offense, regardless of the application or non-application of the general doctrine of jeopardy. We agree with the doctrine established in *People* v. *Collazo,* 51 P.R.R. 437 and *People* v. *Galarza,* 60 P.R.R. 203, since the offenses committed in said cases (Larceny and violation of Dental Act) were not subject to settlement because of their public nature. However, that doctrine is not applicable to the facts of this case for the offense is one of Aggravated Assault and Battery, thus labelled by the People and upheld by the Court, an offense against a person, which does not fall within the exceptions of § 445 (*supra*).

"The court *a quo* and Prosecuting Attorney Morales possibly believed the testimony of the injured party and labelled the offense as an Aggravated Assault and Battery. One of the witnesses (Lydia María Rivera) testified that her other friends,

Gloria Zayas Meléndez and Francis Marrero also witnesses in this case, were with her inside the house when the three heard a shot coming from the place of the occurrence that gave rise to the second count of the information. However, we think, that we are not called upon to set forth here our own conclusions and reasonings as to the weighing of the evidence in the Municipal Court. The affidavits that form part of this record were minutely examined by the prosecution and the municipal judge and in the absence of evidence tending to show that this transaction was the result of fraud, connivance or collusion or that the court acted without jurisdiction, we are compelled to conclude that The People of Puerto Rico is now estopped from prosecuting the defendant for the facts alleged in said second count, since they were finally adjudicated in the Municipal Court, Ponce Section, in criminal case No. 6453, *The People of Puerto Rico* v. *Carlos E. Colón,* of Aggravated Assault and Battery.

"The People claims that the proceedings before the Municipal Court of Puerto Rico, Ponce Section, are void *'ab initio'* because the court acted without jurisdiction, in violation of § 445 of the Code of Criminal Procedure, inasmuch as the facts denounced to that court as constituting the offense of Aggravated Assault and Battery (misdemeanor) did not constitute such an offense, constituting instead a felony, Assault to Commit Murder. This is undoubtedly an attempt to collaterally attack the order of the Municipal Court. Jurisdiction includes the power to examine and dispose of a question, as well as the power to decide the question either erroneously or correctly. Jurisdiction is not vested by the decision which the Court may have entered, but by the court's authority to decide the question raised.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"For the foregoing reasons, the pleas of 'Former Jeopardy' and 'Res Judicata', raised by the defendant, are sustained and, consequently, the dismissal of the second count of the information is hereby ordered, as a definitively closed matter."

It is significant that said court thought that it was not its duty "to invade the sphere of judicial discretion and decide whether or not the judge exercised his discretion properly" and that on the one hand it considers that it is not called upon to set forth its "own conclusions and reasonings as to

the weighing of the evidence in the Municipal Court," and on the other hand it decides that the latter had "jurisdiction" to act as it did. It is evident that, without examining the affidavits given in the course of the Prosecuting Attorney's preliminary examination in order to make its own independent conclusions as to whether the Municipal Court had power to entertain the prosecution and order the dismissal thereof because of a settlement, the court *a quo* decided that it had such power, resting its conclusion on the following factors, (1) The crime being one of Aggravated Assault and Battery, a misdemeanor, the Municipal Court had discretion to approved the settlement; (2) The People labelled it so through its legal representative, the Prosecuting Attorney, choosing the "jurisdiction" to try the case, where "the facts were decided with the State's consent," wherefore, after the close of the transaction, and it not having been shown that the former was "moved by fraud, connivance or collusion," it can not complain now that it chose erroneously the procedure "especially when the transaction was not left to the sole will of the aggrieved party, but the People was also heard and participated in it, giving its consent"; (3) The affidavits given before the Prosecuting Attorney were examined by the Prosecuting Attorney and by the Municipal Judge; (4) The Municipal Court and Prosecuting Attorney Morales possibly "believed the testimony of the injured party and labelled the offense Aggravated Assault and Battery." .

The lower court's approach to the problem was incorrect. Confronted with the intervener's allegation that the order and decree dismissing the information for aggravated assault and battery barred the prosecution for assault to commit murder, and with the plea of res judicata based on the proceedings had before the Municipal Court; and with the prosecution's argument that said proceedings were null and void because the said court lacked power to approve the settlement, it was the duty of the court *a quo* to examine them in order

to make its own conclusions and form its criteria as to whether or not, under the provisions of §§ 445–6 of the Code of Criminal Procedure, the court actually had said power, which is a problem of utmost importance and essential to the study and determination of the questions raised by the intervener and by the prosecution.

In our opinion the court *a quo* erred in assuming that the Municipal Court had acted within the ambit of its powers in entering the order and decree of dismissal, mistakenly concluding that due to the factors listed in its order, it was proper to order the dismissal of the second count of the information.

Section 445 of the Code of Criminal Procedure authorizes, as already noted, that "when a defendant is held to answer on a charge of misdemeanor, for which the person injured by the act constituting the offense has a remedy by civil action, the offense may be compromised," as provided by § 446, except when the offense is committed; "(1) By or upon an officer of justice, while in the execution of the duties of his office; (2) Riotously; (3) With an intent to commit a felony." Section 446 establishes the manner of compromising, vesting the court with discretion to approve and discharge the defendant from guilt, and provides that the order entered to that effect "is a bar to another prosecution for the same offense." Pursuant to the provisions of § 447, "No public offense can be compromised . . . except as provided" in foregoing provisions.

These Sections were approved to allow condonation of certain misdemeanors which because of their nature do not affect the public interest and welfare. That is why despite referring in general terms to misdemeanors, we have held that not all misdemeanors may be compromised. For example, offenses against the Dental Act are of such predominantly public nature, that the provisions of said Sections are not applicable to those offenses. *People* v. *Collazo, supra.*

And in *People* v. *Galarza, supra,* we held that even though petit larceny is a misdemeanor, it is a crime involving moral turpitude and is not included within the terms of §§ 445–6 of the Code of Criminal Procedure. *Obviously, a felony can neither be condoned nor compromised, pursuant to the provisions under discussion.*

From the testimonies given during the preliminary examination of the Prosecuting Attorney, including Owens', which were the only ones in the possession of the Prosecuting Attorney Morales Torres when he filed the information for aggravated assault and battery, and the only ones that the Municipal Court could have examined when it ordered the dismissal, sufficient cause appears to prosecute the intervener for the crime of assault to commit murder, since prima facie they disclose facts that warrant his being prosecuted for said offense.

According to the testimony of the witnesses examined by the Prosecuting Attorney Arturo Cintrón García, the events that gave rise to the prosecution for assault to commit murder, developed as follows:

On August 18, 1951, at daybreak, while Gloria Zayas Meléndez was at the Dominó Club accompanied by Francis Marrero, Lydia María Rivera and Joseph Frederick Owens, the intervener arrived, half drunk, and upon seeing her, "grabbed" one of her hands and told her that he did not want to have enemies, to which she replied that she did not care whether he was her friend or foe. Immediately thereafter the intervener and Gloria had an argument. (Gloria explained that a few months before this incident she had an argument with the intervener because he had asked her to find him a girl friend.) After the argument, Gloria, together with Francis, Lydia and Owens left the Dominó Club and walked towards the automobile of the latter. While she was walking towards the vehicle, the intervener fired a shot with his revolver at her without wounding her, and later asked whether any one wished to come out in her defense to

which there was no answer. Gloria, Francis, Lydia and Owens went to Gloria's house, where they were followed by the intervener. When they arrived at Gloria's house, Owens stopped his car, all of them dismounted and almost immediately the intervener appeared, alighted from his car, and without being threatened or assaulted by Owen, the intervener fired his revolver at him, wounding him.

One of the witnesses who testified before the Prosecuting Attorney Cintrón García stated that the intervener had phoned him. That the intervener asked him to go to his office and told him that he "was furious, that he had fired at the woman but had wounded the American." Upon being asked by said officer whether the intervener had told him that "he had fired at Mrs. Zayas and the bullet had wounded Joe Owens, the American," he answered affirmatively.

Owen's testimony, on his part, was as follows: About daybreak on the day of the events of which the intervener was accused, while he was in his automobile in front of the house of the two girls after having brought them from "Los Meros" ward, the intervener arrived in his automobile and stopped at some distance from where Owens' automobile was parked. The girls ran out shouting, "He's here." Owens knew that sometime before the girls had had trouble with the intervener in the Dominó Bar, and were afraid that the latter might take revenge or do something, and for that reason, he, Owens, alighted from his automobile and darted toward the intervener to keep him from seeing the girls. He did this without any precaution and the intervener, believing that he was going to assault him, took out his revolver and aimed at him as he, the witness, ran towards him. The intervener suddenly fired to his right (Owen's left) as if trying to frighten him, but at that very instance Owens turned to his left, or in other words, toward the intervener's right, being unfortunately wounded in the lower part of his stomach. Upon being questioned by the Prosecuting Attorney as to whether the intervener merely intended to scare

him, he answered affirmatively, saying that he was sure of that, because he had not shot directly at him but to his right side, and that he was also sure that the intervener thought that he was going to assault him. He testified that for these reasons he did not intend to bring charges against the intervener, adding that he was convinced that the intervener had no intentions of assaulting him, and that it had been an accident.

Despite the fact that the witnesses, except Owens, testified before Prosecuting Attorney Cintrón García right after the events, Owens, the injured party, was not examined until two months after the events and on the day before (1) the Prosecuting Attorney Morales Torres filed the information for aggravated assault and battery, (2) Owens filed the motion to dismiss because he had been compensated for the injuries, (3) the said Prosecuting Attorney consented to said motion, (4) the Municipal Court had entered the order and decree to that effect. In other words, Owens is examined today and tomorrow the Prosecuting Attorney files the information, Owens files the motion regarding the compromise, and the court enters the order dismissing the case with the Prosecuting Attorney's consent. When Owens testified, evidently his purpose was to have the intervener discharged and his testimony was the first step towards that aim. Even with this purpose in mind, Owens' testimony shows that the intervener aimed at him with his revolver, suddenly firing to the right side, from where Owens was approaching, and that the latter was wounded as a consequence of the shot. There is no evidence that Owens was armed, or that he tried to attack the intervener. For obvious reasons, we can give no value to Owens' opinion or conclusion that what took place was accidental.

The essential element of the crime of assault to commit murder, which distinguishes it from the crime of aggravated assault and battery, is the intent to kill, which must be specifically alleged and satisfactorily proved. *The People* v. *Gó-*

*mez,* 14 P.R.R. 124. As the intent is a subjective condition, it may be inferred only from the circumstances attending the unlawful act. Section 12 of the Penal Code; *The People v. Bianchi, Jr., et al.,* 18 P.R.R. 560; *People v. Astacio,* 23 P.R.R. 783; *People v. Cadd,* 60 Cal. 640.

In *U. S.* v. *Outerbridge,* 5 Sawy. 620, 27 Fed. Cas. 390, Judge Field says that the usual effect of firing a pistol, at a distance of a few feet only, striking the head or back of a person, is to kill such person and that the law therefore presumes that every one who thus acts intends to kill. *People* v. *Besold,* 154 Cal. 363. In *People* v. *Alegría,* 36 P.R.R. 355, the defendant was sentenced for the crime of attempted murder. He appealed, and in affirming the judgment, we held that "if the evidence of the Government was to be believed, the said jury had a right to conclude that the defendant had the intention of killing the prosecuting witness. The law and the jurisprudence show that from the actions of a person the intention may be deduced. Penal Code, § 12, California Jurisprudence, Vol. 13, p. 597. *The deliberate use and firing of a pistol at another human being are circumstances from which a jury has a right to return a verdict of guilty.*" (Italics ours.) In view of the presumption that "every man is presumed to intend the natural and logical consequences of his own acts," *People* v. *Gómez, supra; People* v. *Newcomer,* 118 Cal. 263; *People* v. *Garcia,* 42 P. 2d 1013 (Cal.), when a person is attacked with a deadly weapon in such a way that naturally, probably and reasonably his death shall be caused or his life endangered, the intention to kill is presumed. This presumption may, of course, be overcome.

We shall bring this discussion to an end by asking, had death ensued, of what crime would the intervener have been charged? "A very common test of the intent with which an assault has been made is to inquire: Would the crime have been murder had death ensued therefrom? If so, it is an assault with intent to murder; otherwise it is only an assault

of a lower degree." *People* v. *Gómez, supra.* In this case we stated that it is not necessary for the evidence to show that the result of the assault, in case of death "would have been murder in the first degree," but that it was sufficient if it would have been "murder in the second degree, to raise the assault to a murderous one." If Owens had died as a result of the wound he received, the intervener would have been prosecuted for the crime of murder. *Landreth* v. *State*, 171 N. E. 192 (Ind.) ; *People* v. *Carrión*, 35 P.R.R. 828. In the latter case we held that "In the use intentionally of a dangerous weapon resulting in the killing of a person the *prima facie* inference is that the accused is guilty of murder."

Having established the premise that the testimonies given during the preliminary investigation of the prosecution show the existence of sufficient cause to accuse the intervener of assault to commit murder, a felony, we must inescapably conclude that the Municipal Court lacked power to take cognizance of the facts and hence to make use of any authority under §§ 445–6 of the Code of Criminal Procedure.

We have stated that the aforesaid Sections merely authorize the use of the Court's *discretion* to assent to the condonation of *misdemeanors*, and that even some of such offenses, can not be compromised. Therefore, it is an anachronism to speak of discretion *in connection with the condonation of felonies*, inasmuch as the statute does not grant such discretion. The Municipal Court was guilty of such anachronism or error upon stating in its decree and order to dismiss that from Owens' testimony circumstances appeared which moved it, within its discretion, to believe that the defendant had not acted with the criminal intent to commit a felony, and the court *a quo* also erred in admitting, as a fact, that it had discretion to approve the transaction.[7]

The Municipal Court's power does not extend to the crime

---

[7] The Municipal Court apparently based its conclusion exclusively on Owens' testimony to the effect that it believed that the intervener had not intended to commit a felony.

of assault to commit murder. Consequently, it could not reduce the degree of that offense, which was the one proved prima facie by the testimonies given before the prosecuting attorney, and regard it as a misdemeanor, in order to be able to exercise the alleged discretion to make a compromise.

Regardless of the foregoing considerations, we repeat that §§ 445–6 of the Code of Criminal Procedure merely authorize the compromise of certain misdemeanors, and that no court can approve the condonation of an offense not a misdemeanor by reducing its degree. Were we to sanction such action, we would be establishing a precedent manifestly contrary to law and without any doubt extremely dangerous and noxious to the administration of penal justice, since it would allow, through that simple, but highly reprehensible method, the thwarting of the legislator's purpose in approving said precepts, and the condonation of offenses that are not subject to compromise.

It is the duty of the prosecuting attorney to file an information for the offense, which, as a matter of fact and of law, is proved by the evidence, and such duty must be complied with for the protection of the People as well as for the protection of those charged with the violation of penal laws. We held in *People* v. *Acosta*, 56 P.R.R. 132, that it is the "duty of the prosecution to submit all the evidence legally available to him to establish the guilt of the parties against whom charges are brought," and that "if it were admitted that the district attorney is authorized to suppress part of the evidence, we would have to admit that he is authorized also to suppress the whole of it and to condone any offense by means of such suppressions," adding that "Agreements of such nature are contrary to public policy and as such are entirely void." By analogy this decision is applicable. It is also contrary to public policy to reduce the degree of the offense, without the evidence warranting it, in order to make the offense subject to compromise and exonerate the defendant.

 Since we are of the opinion that the Municipal Court could not approve the transaction, the factors on which the lower court based the dismissal of the second count of the information for assault to commit murder, and on which the intervener also relied to request that the writ of certiorari be quashed, are of no import or value. Since said court lacks power to sanction the transaction, it is obvious that it could not acquire it by (*a*) labeling the offense as a misdemeanor, when, according to the testimonies given during the investigation of the prosecution it was prima facie a felony, (*b*) the injured party moved for the dismissal of the case, (*c*) the Prosecuting Attorney gave his consent. 1 Freeman on Judgments, p. 677. It is a universal doctrine that if a court lacks power to take cognizance of the matter in litigation, the parties cannot by consent vest it with such power.

 In view of the foregoing, it is our judgment that the proceedings in the Municipal Court which culminated in the intended exoneration of the intervener and which disclose the lack of such power are null and void. In *People* v. *Collazo, supra,* we said, referring to the action of a municipal court in approving the compromise which in that case we considered without any legal effect:

"Reference is also made in the assignment of error to Section 169 of the Code of Criminal Procedure:

"'Section 169.—When the defendant is convicted or acquitted or has been once placed in jeopardy upon an information, the conviction, acquittal, or jeopardy is a bar to another information for the offense charged in the former or for an attempt to commit the same or for an offense necessarily included therein of which he might have been convicted under that information.'

"None of these situations which the lawmaker had in mind is presented herein. As the action of the Municipal Court of San Juan, Second Section, was completely void, it can not be invoked. It is as if it did not exist.

"In the case of *State* v. *Bates,* 61 Pac. 905, 83 Am. St. Rep. 768, 772, the Supreme Court of Utah said:

" 'A void judgment is really no judgment. It leaves the parties litigant in the same position they were in before the trial. It leaves them in exactly the same position as if no trial had taken place. Such a judgment confers authority upon no one to enforce it. "A void judgment," said Mr. Black, "is in reality no judgment at all. It is a mere nullity. It is attended by one of the consequences of a valid adjudication, nor is it entitled to the respect accorded to one. It can neither affect, impair, nor create rights. As to the person against whom it professes to be rendered, it binds him in no degree whatever; it has no effect as a lien upon his property; it does not raise an estoppel against him. As to the person in whose favor it professes to be, it places him in no better position than he occupied before; it gives him no new right, but an attempt to enforce it will place him in peril. As to third persons, it can neither be a source of title, nor an impediment in the way of enforcing their claims. It is not necessary to take any steps to have it reversed, vacated, or set aside. But, whenever it is brought up against a party, he may assail its pretensions and show its worthlessness. It is supported by no presumptions, and may be impeached in any action, direct or collateral." Black, Judgm. sec. 170. In the present case all the proceedings of the trial court after the defendant had entered his plea were wholly void, because the court, in the absence of a lawfull jury, had no jurisdiction to try the cause; and therefore its sentence and judgment were mere nullities, and the affirmance of the judgment by the supreme court could not make them valid. That judgment therefore could be held and treated as a nullity whenever, wherever and by whomsoever used or relied upon as a valid judgment.' "

It necessarily follows from the foregoing that the lower court also erred in deciding that such proceedings could not be challenged collaterally. Restatement, Judgments, § 11, pp. 65 *et seq.*; 1 Freeman on Judgments, pp. 670, 677.

Being, as we have stated, the actions of the Municipal Court null and void, the court *a quo* erred in ordering the dismissal of the second count of the information for the offense of assault to commit murder.

We do not agree with intervener's contention that the reversal of the order of the lower court would operate

as "a double jeopardy in flagrant violation of his constitutional rights." For obvious reasons, it is clear that said intervener was never in jeopardy as a result of the proceedings in the Municipal Court. As to the prosecution for assault to commit murder, the only thing that has happened is that the information filed for that offense was dismissed at the intervener's request. *People* v. *Pagán*, 23 P.R.R. 770; *People* v. *Reyes*, 55 P.R.R. 805; *People* v. *Webb*, 38 Cal. 467; *Ex parte Harron*, 218 Pac. 728; Criminal Law, Dangel, p. 361; 1 Wharton's Criminal Law, p. 547.

The challenged order will be set aside. This does not destroy or impair any right of the intervener. At the trial for the offense of assault to commit murder, in accordance with the principles of due process of law, he shall be able to set up all the defenses legally available to him. We have examined the evidence contained in the summary of the Prosecuting Attorney and introduced before the Municipal Court so that we may determine the power of said court to act as it did. We are not deciding here the guilt or innocence of the intervener. That is for the jury or the court to do.

In virtue of the foregoing, the order appealed from is set aside and the case remanded to the proper division for further proceedings consistent with this opinion.

Mr. Justice Ortiz did not take part in the decision of this case.

